# BROWN-FORMAN DISTILLERS CORP. *v.* NEW YORK STATE LIQUOR AUTHORITY

No. 84–2030.   Argued March 3, 1986—Decided June 3, 1986

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and POWELL and O'CONNOR, JJ., joined, and in all but n. 6 of which BLACKMUN, J., joined. BLACKMUN, J., filed a concurring opinion, *post*, p. 586. STEVENS, J., filed a dissenting opinion, in which WHITE and REHNQUIST, JJ., joined, *post*, p. 586. BRENNAN, J., took no part in the consideration or decision of the case.

*Macdonald Flinn* argued the cause and filed briefs for appellant.

*Lloyd Constantine*, Assistant Attorney General of New York, argued the cause for appellee. With him on the brief were *Robert Abrams*, Attorney General, *Robert Hermann*, Solicitor General, and *August L. Fietkau, Richard G.*

*Liskov,* and *Christopher Keith Hall,* Assistant Attorneys General.*

JUSTICE MARSHALL delivered the opinion of the Court.

The State of New York requires every liquor distiller or producer that sells liquor to wholesalers within the State to sell at a price that is no higher than the lowest price the distiller charges wholesalers anywhere else in the United States. The issue in this case is whether that requirement violates the Commerce Clause of the Constitution.

I

New York extensively regulates the sale and distribution of alcoholic beverages within its borders. The State's Alcoholic Beverage Control Law (ABC Law) prohibits the manufacture and sale of alcoholic beverages within the State without the appropriate licenses, ABC Law § 100(1) (McKinney 1970), and regulates the terms of all sales, §§ 101–a to 101–bbb (McKinney 1970 and Supp. 1986). Distillers and their agents may not sell to wholesalers in New York except in accordance with a price schedule filed with the State Liquor Authority. § 101–b(3)(a). The distiller or agent must file the price schedule before the 25th day of each month, and the prices therein become effective on the first day of the second following month. The schedule must contain a precise description of each item the distiller intends to sell, and a per-bottle and per-case price. All sales to any wholesaler in

---

*Briefs of *amici curiae* urging reversal were filed for the Distilled Spirits Council of the United States, Inc., by *David W. Ichel* and *Russell W. Shannon;* for the Distillers Somerset Group Inc. by *Bartlett H. McGuire* and *James D. Liss;* for the United States Brewers Association, Inc., et al. by *Jeffrey Ives Glekel, Timothy G. Reynolds, Lawrence J. Block, Jerome I. Chapman,* and *William H. Allen;* and for the Wine Institute by *Arnold M. Lerman, Daniel Marcus,* and *Roy T. Englert, Jr.*

Briefs of *amici curiae* urging affirmance were filed for the National Conference of State Legislatures et al. by *Benna Ruth Solomon;* and for Wine and Spirits Wholesalers of America, Inc., by *Michael Whiteman, Douglas W. Metz,* and *Abraham Tunick.*

New York during the month for which the schedule is in effect must be at those prices.

This litigation concerns § 101–b(3)(d) of the ABC Law, which requires any distiller or agent that files a schedule of prices to include an affirmation that "the bottle and case price of liquor to wholesalers set forth in such schedule is no higher than the lowest price at which such item of liquor will be sold by such [distiller] to any wholesaler anywhere in any other state of the United States or in the District of Columbia, or to any state (or state agency) which owns and operates retail liquor stores" during the month covered by the schedule. Violation of the statute may lead to revocation of a distiller's license and the forfeiture of bond posted by the distiller in connection with the license, § 101–b(6). Twenty other States have similar affirmation laws.[1]

Appellant Brown-Forman Distillers Corp. (Brown-Forman) is a distiller that owns several brands of liquor that it sells in New York and in other States. Beginning in 1978, appellant has offered its wholesalers cash payments, or "promotional allowances," which are credited against any amounts due appellant.[2] Appellant intends for wholesalers

---

[1] These States differ in the time reference for the affirmation price. Some require the distiller to set a price that is no higher than the lowest price charged *previously* anywhere in the United States, see, *e. g.*, Ariz. Rev. Stat. Ann. § 4–253(A) (Supp. 1985). Others, like New York, require the affirmed price to be no higher than the lowest price that will be charged during the *current* month. See ABC Law § 101–b(3)(d).

There are 18 States, known as "control" States, that purchase all liquor that will be distributed and consumed within their borders. The control States use a standard sales contract that requires the distiller to warrant that the price the distiller charges to the State is no higher than the lowest price offered anywhere else in the United States. See Brief for Appellant 5, n. 4.

[2] The Federal Bureau of Alcohol, Tobacco and Firearms (BATF), upon appellant's request, ruled that appellant's promotional allowance does not violate the Federal Alcohol Administration Act, 27 U. S. C. §§ 201–211. See § 205(b) (prohibiting "paying or crediting [any] retailer [of alcoholic beverages] for any advertising" if done to induce the retailer to purchase

to use these allowances for advertising; however, the amount of the allowance a wholesaler receives is not tied to the quantity either of the wholesaler's advertising or of its purchases of appellant's products. The amount of a particular wholesaler's allowance does depend on its past purchases and projections of future purchases, but accepting the allowance does not constitute an agreement to purchase any particular quantity of Brown-Forman products. The allowances, therefore, are unconditional, lump-sum payments to all wholesalers, in every State except New York, that purchase Brown-Forman brands.

Appellant offered the promotional allowance to its New York wholesalers, but the Liquor Authority determined that the ABC Law prohibited such payments.[3] The Authority also determined, however, that the payment of promotional allowances to wholesalers in other States lowered the effective price of Brown-Forman brands to those wholesalers, and thus violated § 101–b(3)(d) of the ABC Law.[4] The Liquor Authority accordingly instituted license revocation proceedings against appellant.

Appellant sought review of the Liquor Authority's ruling in the state courts, asserting that it was both arbitrary and unconstitutional. Appellant contended that it could not possibly file a schedule of prices that reflected precisely the "effective price" charged to wholesalers in other States, because there was no one "effective price." Each participating

---

alcohol from the person providing such payment or credit to the exclusion in whole or in part of other distillers or producers). Some of the features of appellant's promotional allowance program described herein were required by BATF in order to ensure that the program would not violate the Act. See Juris. Statement 4.

[3] See § 101–b(2)(b) (prohibiting "any discount, rebate, free goods, allowance or other inducement of any kind whatsoever" except for quantity and prompt-payment discounts of specified amounts).

[4] See § 101–b(3)(g) (in determining lowest price, "appropriate reductions shall be made to reflect all discounts . . . and all rebates, free goods, allowances and other inducements").

wholesaler could pay a different effective price in a given month depending on the amount of Brown-Forman product it had purchased during that month. Moreover, appellant argued, other States did not treat the promotional allowances as discounts. Were New York to force appellant to reduce its prices in that State, appellant would be charging a lower price to New York wholesalers than the price recognized by other States, thereby forcing appellant to violate the affirmation laws of those States. Appellant contended that the only way to avoid this dilemma was to stop offering promotional allowances, unless other States chose to alter their affirmation laws. By effectively forcing appellant to discontinue a promotional program in other States where that program was legal, appellant argued, New York's regulation violated the Commerce Clause. Appellant also argued that the affirmation law on its face directly regulated interstate commerce in violation of the Commerce Clause.

The Appellate Division of the New York Supreme Court rejected these arguments, 100 App. Div. 2d 55, 473 N. Y. S. 2d 420 (1984), as did the New York Court of Appeals, 64 N. Y. 2d 479, 479 N. E. 2d 764 (1985). The Court of Appeals concluded, first, that the Liquor Authority's decision to consider the promotional allowances as a discount was supported by substantial evidence. Second, the court held that the ABC Law as applied does not violate the Commerce Clause, rejecting as speculative appellant's contention that it cannot comply simultaneously with the affirmation laws of New York and of other States. Finally, the court held that the affirmation law, on its face, does not violate the Commerce Clause. We noted probable jurisdiction limited to the question whether the ABC Law, on its face, violates the Commerce Clause, 474 U. S. 814 (1985). We now reverse.

## II

This Court has adopted what amounts to a two-tiered approach to analyzing state economic regulation under the

Commerce Clause. When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. See, *e. g.*, *Philadelphia* v. *New Jersey*, 437 U. S. 617 (1978); *Shafer* v. *Farmers Grain Co.*, 268 U. S. 189 (1925); *Edgar* v. *MITE Corp.*, 457 U. S. 624, 640–643 (1982) (plurality opinion). When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *Pike* v. *Bruce Church, Inc.*, 397 U. S. 137, 142 (1970). We have also recognized that there is no clear line separating the category of state regulation that is virtually *per se* invalid under the Commerce Clause, and the category subject to the *Pike* v. *Bruce Church* balancing approach. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity. See *Raymond Motor Transportation, Inc.* v. *Rice*, 434 U. S. 429, 440–441 (1978).

A

Appellant does not dispute that New York's affirmation law regulates all distillers of intoxicating liquors evenhandedly, or that the State's asserted interest—to assure the lowest possible prices for its residents—is legitimate. Appellant contends that these factors are irrelevant, however, because the lowest-price affirmation provision of the ABC Law falls within that category of direct regulations of interstate commerce that the Commerce Clause wholly forbids. This is so, appellant contends, because the ABC Law effectively regulates the price at which liquor is sold in other States. By requiring distillers to affirm that they will make no sales anywhere in the United States at a price lower than the posted price in New York, appellant argues, New York makes it illegal for a distiller to reduce its price in other States during the period that the posted New York price is in

effect. Appellant contends that this constitutes direct regulation of interstate commerce. The law also disadvantages consumers in other States, according to appellant, and is therefore the sort of "simple economic protectionism" that this Court has routinely forbidden. *Philadelphia* v. *New Jersey, supra,* at 624.

If appellant has correctly characterized the effect of the New York lowest-price affirmation law, that law violates the Commerce Clause. While a State may seek lower prices for its consumers, it may not insist that producers or consumers in other States surrender whatever competitive advantages they may possess. *Baldwin* v. *G. A. F. Seelig, Inc.,* 294 U. S. 511, 528 (1935); *Schwegmann Brothers Giant Super Markets* v. *Louisiana Milk Comm'n,* 365 F. Supp. 1144 (MD La. 1973), aff'd, 416 U. S. 922 (1974). Economic protectionism is not limited to attempts to convey advantages on local merchants; it may include attempts to give local consumers an advantage over consumers in other States. See, *e. g., New England Power Co.* v. *New Hampshire,* 455 U. S. 331, 338 (1982) (State may not require "that its residents be given a preferred right of access, over out-of-state consumers, to natural resources located within its borders"). In *Seelig, supra,* this Court struck down New York's Milk Control Act. The Act set minimum prices for milk purchased from producers in New York and in other States, and banned the resale within New York of milk that had been purchased for a lower price. Justice Cardozo's opinion for the Court recognized that a State may not "establish a wage scale or a scale of prices for use in other states, and . . . bar the sale of the products . . . unless the scale has been observed." *Id.,* at 528. The mere fact that the effects of New York's ABC Law are triggered only by sales of liquor within the State of New York therefore does not validate the law if it regulates the out-of-state transactions of distillers who sell in-state. Our inquiry, then, must center on whether New York's affirmation law regulates commerce in other States.

## B

This Court has once before examined the extraterritorial effects of a New York affirmation statute. In *Joseph E. Seagram & Sons, Inc.* v. *Hostetter*, 384 U. S. 35 (1966), the Court considered the constitutionality, under the Commerce and Supremacy Clauses, of the predecessor to New York's current affirmation law. That law differed from the present version in that it required the distiller to affirm that its prices during a given month in New York would be no higher than the lowest price at which the item had been sold elsewhere during the *previous* month. The Court recognized in that case, as we have here, that the most important issue was whether the statute regulated out-of-state transactions. *Id.*, at 42–43. It concluded, however, that "[t]he mere fact that [the statute] is geared to appellants' pricing policies in other States is not sufficient to invalidate the statute." The Court distinguished *Seelig, supra*, by concluding that any effects of New York's ABC Law on a distiller's pricing policies in other States were "largely matters of conjecture," 384 U. S., at 42–43.

Appellant relies on *United States Brewers Assn.* v. *Healy*, 692 F. 2d 275 (CA2 1982), summarily aff'd, 464 U. S. 909 (1983), in seeking to distinguish the present case from *Seagram*. In *Healy*, the Court of Appeals for the Second Circuit considered a Connecticut price-affirmation statute for beer sales that is not materially different from the current New York ABC Law. The Connecticut statute, like the ABC Law, required sellers to post prices at the beginning of a month, and proscribed deviation from the posted prices during that month. The statute also required brewers to affirm that their prices in Connecticut were as low as the price at which they would sell beer in any bordering State during the effective month of the posted prices. The Court of Appeals distinguished *Seagram* based on the "prospective" nature of this affirmation requirement. It concluded that the Connecticut statute made it impossible for a brewer to lower

its price in a bordering State in response to market conditions so long as it had a higher posted price in effect in Connecticut. By so doing, the statute "regulate[d] conduct occurring wholly outside the state," 692 F. 2d, at 279, and thereby violated the Commerce Clause. We affirmed summarily.

## C

We agree with appellant and with the *Healy* court that a "prospective" statute such as Connecticut's beer affirmation statute, or New York's liquor affirmation statute, regulates out-of-state transactions in violation of the Commerce Clause. Once a distiller has posted prices in New York, it is not free to change its prices elsewhere in the United States during the relevant month.[5] Forcing a merchant to seek regulatory approval in one State before undertaking a transaction in another directly regulates interstate commerce. *Edgar* v. *MITE Corp.*, 457 U. S., at 642 (plurality opinion); see also *Baldwin* v. *G. A. F. Seelig, Inc.*, 294 U. S., at 522 (regulation tending to "mitigate the consequences of competition between the states" constitutes direct regulation). While New York may regulate the sale of liquor within its borders, and may seek low prices for its residents, it may not

---

[5] The Liquor Authority may "for good cause shown" permit a distiller to change its prices during a particular month, ABC Law § 101–b(3)(a), and New York speculates that the Authority would permit a distiller to lower its prices in other States in a given month so long as the distiller also lowers them in New York. However, whether to permit such a deviation from the statutory scheme is a matter left by the statute to the discretion of the Liquor Authority.

We would not solve the constitutional problems inherent in New York's statute by indulging the dissent's assumption that the Authority will be sensitive to Commerce Clause concerns. Certainly New York could not require an out-of-state company to receive a license from New York to do business in other States, even if we were quite sure that such licenses would be granted as a matter of course. Similarly, New York simply may not force appellant to seek regulatory approval from New York before it can reduce its prices in another State. The protections afforded by the Commerce Clause cannot be made to depend on the good grace of a state agency.

"project its legislation into [other States] by regulating the price to be paid" for liquor in those States. *Id.*, at 521.

That the ABC Law is addressed only to sales of liquor in New York is irrelevant if the "practical effect" of the law is to control liquor prices in other States. *Southern Pacific Co.* v. *Arizona ex rel. Sullivan*, 325 U. S. 761, 775 (1945). We cannot agree with New York that the practical effects of the affirmation law are speculative. It is undisputed that once a distiller's posted price is in effect in New York, it must seek the approval of the New York State Liquor Authority before it may lower its price for the same item in other States. It is not at all counterintuitive, as the dissent maintains, *post*, at 588, to assume that the Liquor Authority would not permit appellant to reduce its New York price after the posted price has taken effect. The stated purpose of the prohibition on price changes during a given month is to prevent price discrimination among retailers, see ABC Law §§ 101–b(1), (2)(a). That goal is in direct conflict with the dissent's view of the "whole purpose" of the ABC Law, and we have no means of predicting how the Authority would resolve that conflict. We do know, however, that the Liquor Authority forbade appellant to reduce its New York prices by offering promotional allowances to New York retailers, precisely because the Authority believed that program would violate the price-discrimination provisions. App. to Juris. Statement 50a. The dissent would require us to assume that other States will adopt a flexible approach to appellant's promotional allowance program, *post*, at 589, despite New York's refusal to do so.

Moreover, the proliferation of state affirmation laws following this Court's decision in *Seagram* has greatly multiplied the likelihood that a seller will be subjected to inconsistent obligations in different States. The ease with which New York's lowest-price regulation can interfere with a distiller's operations in other States is aptly demonstrated by the controversy that gave rise to this lawsuit. By defining the "effective price" of liquor differently from other States,

New York can effectively force appellant to abandon its promotional allowance program in States in which that program is legal, or force those other States to alter their own regulatory schemes in order to permit appellant to lower its New York prices without violating the affirmation laws of those States. Thus New York has "project[ed] its legislation" into other States, and directly regulated commerce therein, in violation of *Seelig, supra.*[6]

## III

New York finally contends that the Twenty-first Amendment, which bans the importation or possession of intoxicating liquors into a State "in violation of the laws thereof," saves the ABC Law from invalidation under the Commerce Clause. That Amendment gives the States wide latitude to regulate the importation and distribution of liquor within their territories, *California Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.,* 445 U. S. 97, 107 (1980). Therefore, New York argues, its ABC Law, which regulates the sale of alcoholic beverages within the State, is a valid exercise of the State's authority.

It is well settled that the Twenty-first Amendment did not entirely remove state regulation of alcohol from the reach of the Commerce Clause. See *Bacchus Imports, Ltd.* v. *Dias,* 468 U. S. 263 (1984). Rather, the Twenty-first Amendment and the Commerce Clause "each must be considered in light of the other and in the context of the issues and interests at stake in any concrete case." *Hostetter* v. *Idlewild Bon Voyage Liquor Corp.,* 377 U. S. 324, 332 (1964). Our task, then,

---

[6] While we hold that New York's prospective price affirmation statute violates the Commerce Clause, we do not necessarily attach constitutional significance to the difference between a prospective statute and the retrospective statute at issue in *Seagram.* Indeed, one could argue that the effects of the statute in *Seagram* do not differ markedly from the effects of the statute at issue in the present case. If there is a conflict between today's decision and the *Seagram* decision, however, there will be time enough to address that conflict should a case arise involving a retrospective statute. Because no such statute is before us now, we need not consider the continuing validity of *Seagram.*

is to reconcile the interests protected by the two constitutional provisions.

New York has a valid constitutional interest in regulating sales of liquor within the territory of New York. Section 2 of the Twenty-first Amendment, however, speaks only to state regulation of the "transportation or importation into any State . . . for delivery or use therein" of alcoholic beverages. That Amendment, therefore, gives New York only the authority to control sales of liquor in New York, and confers no authority to control sales in other States. The Commerce Clause operates with full force whenever one State attempts to regulate the transportation and sale of alcoholic beverages destined for distribution and consumption in a foreign country, *Idlewild Bon Voyage Liquor Corp., supra,* or another State. Our conclusion that New York has attempted to regulate sales in other States of liquor that will be consumed in other States therefore disposes of the Twenty-first Amendment issue.

Moreover, New York's affirmation law may interfere with the ability of other States to exercise their own authority under the Twenty-first Amendment. Once a distiller has posted prices in New York, it is not free to lower them in another State, even in response to a regulatory directive by that State, without risking forfeiture of its license in New York. New York law, therefore, may force other States either to abandon regulatory goals or to deprive their citizens of the opportunity to purchase brands of liquor that are sold in New York. New York's reliance on the Twenty-first Amendment is therefore misplaced. Having found that the ABC Law on its face violates the Commerce Clause, and is not a valid exercise of New York's powers under the Twenty-first Amendment, we reverse the judgment of the New York Court of Appeals.

*It is so ordered.*

JUSTICE BRENNAN took no part in the consideration or decision of this case.

JUSTICE BLACKMUN, concurring.

I join the Court's opinion (except for its footnote 6), but I would go further and overrule *Joseph E. Seagram & Sons, Inc.* v. *Hostetter*, 384 U. S. 35 (1966). *Seagram* is now a relic of the past. It was decided when affirmation statutes were comparatively new and long before the proliferation of overlapping and potentially conflicting affirmation statutes that has taken place in the last two decades. I see no principled distinction that can be drawn for constitutional analysis between New York's current prospective statute and the same State's retroactive statute upheld in *Seagram*, and I doubt very much whether any Member of this Court would be able to perceive one. Either type, despite one's best efforts at fine-tuning, operates to affect out-of-state transactions and violates the Commerce Clause. Our failure to overrule *Seagram* now merely preserves uncertainty and will breed or necessitate further litigation. We should face reality and overrule *Seagram*.

JUSTICE STEVENS, with whom JUSTICE WHITE and JUSTICE REHNQUIST join, dissenting.

Speculation about hypothetical cases illuminates the discussion in a classroom, but it is evidence and historical fact that provide the most illumination in a courtroom. Forgoing the support of a record developed at trial, appellant Brown-Forman Distillers Corporation (Brown-Forman) contends that New York's Alcoholic Beverage Control (ABC) Law § 100 *et seq.* (McKinney 1970 and Supp. 1986) is an unconstitutional burden on interstate commerce "on its face." Over 20 years ago this Court unanimously refused to invalidate the predecessor of New York's present statute on precisely the same ground. As Justice Stewart then explained:

"The mere fact that § 9 is geared to appellants' pricing policies in other States is not sufficient to invalidate the

statute. As part of its regulatory scheme for the sale of liquor, New York may constitutionally insist that liquor prices to domestic wholesalers and retailers be as low as prices offered elsewhere in the country. The serious discriminatory effects of § 9 alleged by appellants on their business outside New York are largely matters of conjecture. It is by no means clear, for instance, that § 9 must inevitably produce higher prices in other States, as claimed by appellants, rather than the lower prices sought for New York. It will be time enough to assess the alleged extraterritorial effects of § 9 when a case arises that clearly presents them." *Joseph E. Seagram & Sons, Inc.* v. *Hostetter*, 384 U. S. 35, 43 (1966).

Two decades have elapsed since those sentences were written. In the interim, Brown-Forman has been selling its products in more than 30 States, including New York. Yet at no time did it introduce any evidence tending to prove that New York's ABC Law affected the price of its products in any other State.[1]

In lieu of evidence about the actual impact of the New York statute, the Court speculates that the ABC Law prevents price competition in transactions involving Brown-Forman's products in other States. See *ante,* at 579–580, 582. This result is not a necessary consequence of the operation of the New York law. To begin with, so far as New York is concerned Brown-Forman may maintain its selling price in other States or may increase it—either is consistent with Brown-Forman's promise to give New York wholesalers its "lowest price." § 101–b(3)(d). Only if Brown-Forman reduces its

---

[1] The record does show that Brown-Forman's promotional allowances "effectively lowered the price to wholesalers in Massachusetts below the affirmation price in New York" in a manner "designed to circumvent the New York State Alcoholic Beverage Control Law." App. to Juris. Statement 51a. This evidence, however, surely does not provide any basis for distinguishing this case from the *Seagram* case.

prices outside of New York would it violate its affirmation. But in that event, the State allows it to extend the same discount to its New York customers "for good cause shown and for reasons not inconsistent with the purpose of this chapter." § 101–b(3)(a).[2]  There is nothing in the record to suggest that the State Liquor Authority would ever object to a price *reduction* to conform to a lower out-of-state price, and it is counterintuitive to assume that it would.  The whole purpose of the law, after all, is to provide New York consumers with the lowest prices that can be obtained.  Consistent with this purpose, the State Liquor Authority has, in a similar situation, "offered to grant approval . . . to offer a cash discount in New York equivalent to the product discounts [the distiller] would offer in other states." *Joseph E. Seagram & Sons, Inc.* v. *Gazzara*, 610 F. Supp. 673, 678, n. 5 (SDNY), appeal docketed, No. 85–7547 (CA2, July 1, 1985).  The administrative flexibility demonstrated by the State Liquor Authority thus belies the Court's assumption to the contrary.  See *ante*, at 582, n. 5.  It also demonstrates the wisdom of the *Seagram* Court's unwillingness to "presume that the Authority will not exercise that discretion to alleviate any friction that might result should the ABC Law chafe against" a provision of the Federal Constitution. *Seagram & Sons, Inc.* v. *Hostetter*, 384 U. S., at 46 (rejecting Supremacy Clause challenge predicated on federal antitrust laws).  Cf. *id.*, at 51.  The presumption of constitutionality applied in *Seagram* not only accords with tradition—agencies are frequently charged with rectifying questionable applica-

---

[2] The Connecticut statute invalidated on its face in *United States Brewers Assn., Inc.* v. *Healy*, 692 F. 2d 275 (CA2 1982), summarily aff'd, 464 U. S. 909 (1983), had no escape clause.  See 692 F. 2d, at 276–277, nn. 3, 5, 6, and 7.  The Second Circuit panel construed the Connecticut statute "to control the minimum price that may be charged by a non-Connecticut brewer to a non-Connecticut wholesaler in a sale outside of Connecticut." *Id.*, at 282.

tions of necessarily general rules—it is also consistent with the respect due state administrative organs responsible for the operation of a state law whose constitutionality is challenged on its face. Cf. *United States* v. *Vuitch*, 402 U. S. 62, 70 (1971).[3] And if the State Liquor Authority were in fact to allow Brown-Forman to extend discounts given outside the State to its customers in New York, there is no reason to suppose that those other States would in turn refuse to allow Brown-Forman to credit the value of its promotional allowances against its list prices in order to comply with the statutory recording obligations in those States.[4]

---

[3] This discussion indulges the Court's unstated assumption that price changes are not preceded by sufficient lead time to comply with the 35-day notice provision of the ABC Law. Again, however, there is nothing in the record to indicate that Brown-Forman has ever found it necessary to make a price change that could not be preceded by sufficient notice. *Amicus curiae* Wine & Spirits Wholesalers of America, Inc., informs us that the 18 States with liquor monopolies "perhaps typically" require suppliers "to warrant that quoted prices will remain in effect for a minimum of 90 days." Brief for Wine and Spirits Wholesalers of America, Inc., as *Amicus Curiae* 9, n. 6. If, as a result of such contracts, prices in this industry are changed quarterly or at other infrequent intervals and are normally preceded by an announcement that the effective date of the change will be two or more months in the future, the statute would not have any inhibiting effect whatsoever on Brown-Forman's pricing decisions.

[4] "In making this argument, appellant assumes, and properly so, that other States will enforce their liquor laws. But appellant also requires us to assume that other States will enforce their laws without regard for reality, and this we are unwilling to do.

". . . It is certainly reasonable to expect that other States will recognize that the prices on appellant's New York schedules have been adjusted, because of New York's statutory requirements, to take into account the effect of credits enjoyed by wholesalers elsewhere—credits which the other States receiving the tangible benefits of appellant's program apparently have already chosen not to consider in determining the affirmed price.

". . . It would require us to engage in mere speculation were we to declare, on such a tenuous basis, the lowest-price affirmation statute

Even if these open questions are all resolved in the Court's favor, its conclusion that the ABC Law trenches on interstate commerce does not follow from *Baldwin* v. *G. A. F. Seelig, Inc.*, 294 U. S. 511 (1935), the authority on which it primarily relies. Decided 30 years before *Seagram*, that case invalidated the New York Milk Control Act on the ground that it was designed to inflate milk prices in order to protect New York producers from out-of-state competition, see 294 U. S., at 519—a classic illustration of economic provincialism.[5] By contrast, the New York ABC Act was designed to keep the prices of liquor down in order to give New York consumers the benefit of out-of-state competition. See 384 U. S., at 38–39, and n. 9. The obvious infirmity of the statute struck down in *Seelig* thus says nothing about the constitutionality of the statute before us.

Moreover, as Judge Friendly observed, "[f]or some of us who were 'present at the creation' of the Twenty-First Amendment, there is an aura of unreality in [the] assumption that we must examine the validity of New York's Alcoholic Beverage Control Law (ABC Law) just as we would examine the constitutionality of a state statute governing the sale of gasoline"—or, I would add, of milk. *Battipaglia* v. *New York State Liquor Authority*, 745 F. 2d 166, 168 (CA2 1984), cert. denied, 470 U. S. 1027 (1985). The statute in *Seelig* regulated an article of commerce that New York had no

---

unconstitutional as applied." 64 N. Y. 2d 479, 489–490, 479 N. E. 2d 764, 769–770 (1985) (citations omitted).

Moreover, such possible consequences in States other than New York would seem to provide as good a reason for invalidating those States' laws as it does for striking down New York's statute.

[5] Seelig had purchased milk from Vermont farmers at a competitive price—instead of the New York regulated price—and was therefore denied a license to resell that milk in New York. *Baldwin* v. *G. A. F. Seelig, Inc.*, 294 U. S., at 520. As Justice Cardozo explained, Seelig "may keep his milk or drink it, but sell it he may not." *Id.*, at 521.

power to exclude from the State;[6] the statute challenged here, in contrast, regulates the sale of a product that the Twenty-first Amendment expressly authorizes New York to exclude entirely from its local market.[7]   As Justice Stewart explained for a unanimous Court in *Seagram:*

> "Consideration of any state law regulating intoxicating beverages must begin with the Twenty-first Amendment, the second section of which provides that: 'The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.'   As this Court has consistently held, 'That Amendment bestowed upon the states broad regulatory power over the liquor traffic within their territories.'   *United States* v. *Frankfort Distilleries,* 324 U. S. 293, 299 [1945].   Cf. *Nippert* v. *Richmond,* 327 U. S. 416, 425, n. 15 [1946].   Just two Terms ago we took occasion to reiterate that 'a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders.'   *Hostetter* v. *Idlewild Liquor Corp.,* 377 U. S. 324, 330 [1964].   See *State Board of Equalization* v. *Young's Market Co.,* 299 U. S. 59 [1936]; *Mahoney* v.

---

[6] "New York has no power to project its legislation into Vermont by regulating the price to be paid in that state for milk acquired there.   So much is not disputed.   New York is equally without power to prohibit the introduction within her territory of milk of wholesome quality acquired in Vermont, whether at high prices or at low ones.   This again is not disputed."   *Ibid.*

[7] New York's ABC Law complies with the letter and spirit of the Twenty-first Amendment.   The New York law imposes a condition precedent to importation of liquor into the State pursuant to the literal terms of the Amendment, and it does so "for the purpose of fostering and promoting temperance in th[e] consumption [of alcoholic beverages] and respect for and obedience to the law."   § 101–b(1).   Cf. *Bacchus Imports, Ltd.* v. *Dias,* 468 U. S. 263 (1984).

*Joseph Triner Corp.,* 304 U. S. 401 [1938]; *Ziffrin, Inc.*
v. *Reeves,* 308 U. S. 132 [1939]; *California* v. *Washington,* 358 U. S. 64 [1958]. Cf. *Indianapolis Brewing Co.* v. *Liquor Comm'n,* 305 U. S. 391 [1939]; *Joseph S. Finch & Co.* v. *McKittrick,* 305 U. S. 395 [1939]." 384 U. S., at 41–42.[8]

Of more recent vintage, see *Capital Cities Cable, Inc.* v. *Crisp,* 467 U. S. 691, 712–713 (1984); *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.,* 445 U. S. 97, 110 (1980).

It may well be true that the network of statutes that have spread across the Nation since the Court's decision in *Seagram* has created "so grave an interference with" interstate commerce as to exceed the "wide latitude for [state] regulation" under the Twenty-first Amendment and to make "the regulation invalid under the Commerce Clause." 384 U. S., at 42–43. If that be the case, however, there should be ample evidence available to a concerned litigant to prove that this consequence has in fact developed. Until that is done, I believe we have a duty to adhere to the ruling in *Seagram.* Accordingly, I respectfully dissent.

---

[8] The Court's Twenty-first Amendment analysis, unsupported by any citation to authority, appears to be at war with itself. I simply cannot understand how the Twenty-first Amendment gives New York *no* right to condition access to *its* market on compliance with a "lowest price" affirmation (because to do so affects liquor sales in other States), and yet at the same time gives other States authority "to purchase brands of liquor that are sold in New York." *Ante,* at 585. By reading the Twenty-first Amendment broadly to encompass any interstate regulation of liquor, but removing the constitutional shield when the faintest economic ripples begin to flow outside state borders, the Court has, at least in the interdependent national liquor market in which Brown-Forman participates, gutted the constitutional provision.