# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-1411

_____

Smithfield Foods, Inc.; Murphy    *
Farms, LLC; Prestage Stoecker    *
Farms, Inc.,    *
   *
       Appellees,    *
   *   Appeal from the United States
      v.    *   District Court for the
   *   Southern District of Iowa.
Thomas J. Miller, Attorney General    *
of the State of Iowa in his Official    *
Capacity,    *
   *
       Appellant.    *
   *
   *
_____    *
   *
Christopher Bedford; Lori Sokolowski;    *
Iowa Citizens for Community    *
Improvement; Missouri Rural Crisis    *
Center; Land Stewardship Project;    *
Illinois Stewardship Alliance; Citizens    *
Action Coalition of Indiana; Campaign    *
for Family Farms; National Family    *
Farm Coalition; Iowa Pork Producers    *
Association; Iowa Farm Bureau    *
Federation; Iowa Farmers Union,    *
   *
       Amici on behalf of    *
       Appellant.    *

Submitted: October 23, 2003
Filed: May 21, 2004
_____

Before RILEY, HEANEY, and SMITH, Circuit Judges.
_____

RILEY, Circuit Judge.

Smithfield Foods, Inc. (Smithfield Foods), Murphy Farms, LLC (Murphy Farms), and Prestage Stoecker Farms, Inc. (Prestage Stoecker), (collectively Smithfield), brought a suit against the Iowa Attorney General (the Attorney General), contending Iowa Code section 9H.2 (2003)[1] (section 9H.2) violates the dormant Commerce Clause. The district court entered summary judgment in Smithfield's favor, concluding section 9H.2 discriminated against interstate commerce on its face, in purpose, and in effect. The Attorney General appeals. During this appeal, the Iowa General Assembly (General Assembly) amended section 9H.2. We vacate the district court's entry of summary judgment and remand for consideration of the recently amended section 9H.2. We do not address the district court's ultimate conclusion that the prior version of section 9H.2 violates the dormant Commerce Clause, nor do we consider the constitutionality of the former version of section 9H.2.

I.    BACKGROUND

Smithfield Foods, a Virginia corporation with its principal business office in Virginia, claims to be the largest vertically integrated pork producer in the world. Smithfield Foods owns Murphy Farms, a Delaware limited liability company headquartered in North Carolina. Murphy Farms contracts with Prestage Stoecker,

_____

[1]Subsequent legislation transferred section 9H.2 to chapter 202B of the Iowa Code. 2003 Iowa Acts ch. 115, § 16; see Iowa Code §§ 201B.101, 202B.201 & 202B.202 (Supp. 2004).

an Iowa corporation with its principal place of business in Iowa, for the feeding and care of swine in Iowa.

Section 9H.2 prohibited pork and beef processors from engaging in certain activities. See Iowa Code § 9H.2 (2003). The General Assembly adopted section 9H.2 "to preserve free and private enterprise, prevent monopoly, and also to protect consumers." Iowa Code § 9H.2 (2003); 1975 Iowa Acts ch. 133, § 2. Section 9H.2 originally attempted to accomplish these goals by declaring it unlawful for pork and beef processors "to own, control, or operate a feedlot in Iowa." 1975 Iowa Acts ch. 133, § 2. The General Assembly has amended the statute several times since 1975, arguably to hinder Smithfield's ability to operate in Iowa. An amendment in 2002 expanded the prohibited activities for processors by prohibiting processors from financing a swine operation in Iowa or "a person who directly or indirectly contracts for the care and feeding of swine in [Iowa]." 2002 Iowa Acts ch. 1095, § 4(1)(b)(1)(b). The 2002 amendment also expanded the definition of "processor" to include any individual who holds, or within the past two years held, an executive position in a processor entity that has direct or indirect control of processing operations valued at over $260 million. Id. at § 2(19)(b). At the time this suit was filed, section 9H.2 exempted cooperatives organized under Iowa law, if the contract for care and feeding was with a member of a cooperative actively engaged in farming. Iowa Code § 9H.2(1)(b)(2) (2003). Section 9H.2 also exempted "an association organized as a cooperative in which another cooperative association organized under [Iowa law] is a member, if the association contracts with a member which is a cooperative association organized under [Iowa law], which contracts for the care and feeding of swine with a member of the cooperative" (the cooperative exception).[2] Id.

[2]Various amici argue the district court misconstrued the cooperative exception's scope. We need not address this issue, because the cooperative exception's scope is not imperative to our disposition of this case.

-3-

After the 2002 amendment, Smithfield filed this suit, alleging section 9H.2 violated the dormant Commerce Clause. On summary judgment, the district court granted judgment in Smithfield's favor, concluding section 9H.2 violated the dormant Commerce Clause, because section 9H.2 discriminated against out-of-state entities on its face, in its purpose, and in its effect. The district court concluded the cooperative exception rendered section 9H.2 facially discriminatory. The Attorney General appeals.

During this appeal, the General Assembly amended section 9H.2 (the 2003 amendment) and repealed the cooperative exception from section 9H.2, but delayed the requirement that cooperatives comply with section 9H.2 until 2007, if the cooperative engaged in the prohibited activity before the 2003 amendment. 2003 Iowa Acts ch. 115, §§ 5, 7, 8. Since section 9H.2 has been amended, we cannot resolve this important constitutional question on the current record and must remand the case to the district court for further consideration.

## II. DISCUSSION

### A. Standard of Review

"We review the district court's grant of summary judgment de novo." Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1027 (8th Cir. 2003). "We will affirm a district court's grant of summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . ,' demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)). We must review the challenged Iowa law as it now exists, not as the law existed at the time of the district court's judgment. Rosenstiel v. Rodriguez, 101 F.3d 1544, 1548 (8th Cir. 1996).

**B.    Mootness**

Before we determine whether section 9H.2[3] violates the dormant Commerce Clause, we first consider whether the 2003 amendment moots this appeal.  A controversy is not moot if the new statute "is sufficiently similar to the repealed [statute] that it is permissible to say that the challenged conduct continues." Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 662-63 & n.3 (1993).  "[I]f the new statute disadvantages [Smithfield] in the same fundamental way the repealed statute did, the amendment does not divest the court of the power to decide the case."  Rosenstiel, 101 F.3d at 1548.  Section 9H.2 appears to disadvantage Smithfield the same way it did before the 2003 amendment.  The pre-2003 amendment section 9H.2 prohibited Smithfield from engaging in certain activities in Iowa.  By striking the cooperative exception, the 2003 amendment enlarged the group subject to its prohibitions and seems to impose the same restrictions on Smithfield as before the amendment.  Thus, the 2003 amendment does not moot this appeal.

**C.    Constitutionality**

We now turn to section 9H.2's constitutionality.  The dormant Commerce Clause prohibits states from "enact[ing] laws that discriminate against or unduly burden interstate commerce." S.D. Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583, 592 (8th Cir. 2003).  The dormant Commerce Clause "prevent[s] a State from retreating into economic isolation or jeopardizing the welfare of the Nation as a whole, as it would do if it were free to place burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." Okla. Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 179-80 (1995); see also Hazeltine, 340 F.3d at 593.

---

[3]Unless otherwise noted, all further references to section 9H.2 are to section 9H.2, as amended by the 2003 amendment.  We will refer to the version of section 9H.2 before the district court as the pre-2003 amendment section 9H.2.  We remind the reader that section 9H.2 has recently been recodified to Iowa Code sections 202B.101, 202B.201, and 202B.202.

To determine whether section 9H.2 violates the dormant Commerce Clause, we utilize a two-tiered analysis. First, we must consider whether section 9H.2 discriminates against interstate commerce. Hazeltine, 340 F.3d at 593. Discrimination against interstate commerce means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Id. (quoting Or. Waste Sys., Inc. v. Dep't of Envtl. Quality, 511 U.S. 93, 99 (1994)). If section 9H.2 discriminates against interstate commerce, we subject section 9H.2 to the strictest scrutiny, and will uphold section 9H.2 only if Iowa can establish it has "no other means to advance a legitimate local interest." Id. (citation omitted). Second, if section 9H.2 regulates even-handedly and only incidentally affects interstate commerce, we will uphold section 9H.2 "unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

The first-tier review recognizes three indicators of discrimination against interstate commerce. Hazeltine, 340 F.3d at 593. First, a statute is adopted with a discriminatory *purpose*. Id. (citing Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 270 (1984)). Second, a statute has a discriminatory *effect*. Id. (citing Maine v. Taylor, 477 U.S. 131, 148 n.19 (1986)). Third, a statute discriminates against interstate commerce on its *face*. Id. (citing Chem. Waste Mgmt. v. Hunt, 504 U.S. 334, 342 (1992)).

On the record before us, we are unable to determine whether the new section 9H.2 possesses a discriminatory purpose. Courts look to direct and indirect evidence to determine whether a state adopted a statute with a discriminatory purpose. This evidence includes (1) statements by lawmakers, id. at 593-94; Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 336 (4th Cir. 2001); (2) the sequence of events leading up to the statute's adoption, including irregularities in the procedures used to adopt the law, Hazeltine, 340 F.3d at 594; Gilmore, 252 F.3d at 336; (3) the State's consistent pattern of "disparately impacting members of a particular class of persons," Gilmore, 252 F.3d at 336; (4) the statute's historical background, including

"any history of discrimination by the [state]," id.; and (5) the statute's use of highly ineffective means to promote the legitimate interest asserted by the state, SDDS, Inc. v. South Dakota, 47 F.3d 263, 268-69 (8th Cir. 1995).

In concluding Iowa adopted the pre-2003 amendment section 9H.2 with a discriminatory purpose, the district court relied on (1) statements made by a sponsor of the 2002 amendment (Senator Iverson) to constituents when the 2002 amendment was pending before the Iowa Senate, (2) a statement in an advertising supplement compiled through the initiative of the Iowa Governor, and (3) language from Iowa Code section 15E.203(1). While statements by legislators and the governor about the challenged statute may be indirect evidence of an act's discriminatory purpose, this record contains no such evidence regarding the purpose behind the 2003 amendment.[4] Statements by the legislators and the governor about the 2003 amendment may shed light on whether the General Assembly adopted the amendment as part of an apparent pattern of thwarting Smithfield's attempts to operate in Iowa, or to save section 9H.2 at the expense of in-state interests, or to eviscerate the prior section 9H.2's allegedly discriminatory purpose.

We also cannot discern from the record whether the 2003 version of section 9H.2 has a discriminatory effect on interstate commerce. A statute has a discriminatory effect if the statute "favor[s] in-state economic interests over out-of-state interests." Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 579 (1986). Although we know section 9H.2 continues to affect Smithfield as it did before the 2003 amendment, the record does not any contain evidence showing the amendment's impact on in-state or other out-of-state interests.

_____

[4]We recognize the General Assembly included a purpose statement in the 2003 amendment. See Iowa Code § 202B.101 (Supp. 2004). Notwithstanding section 9H.2's stated purpose, "when considering the purpose of a challenged statute, [we are] not bound by '[t]he name, description or characterization given it by the legislature or the courts of the State.'" Hughes v. Oklahoma, 441 U.S. 322, 336 (1979) (quoting Lacoste v. La. Dep't of Conservation, 263 U.S. 545, 550 (1924)).

Thus, we cannot adequately determine whether section 9H.2 favors in-state economic interests over out-of-state economic interests.

Finally, Smithfield argues section 9H.2 facially discriminates against interstate commerce, because it allows cooperatives who are engaging in activities now prohibited by section 9H.2 to continue to engage in those activities until 2007, while non-cooperative entities must comply by 2006. 2003 Iowa Acts ch. 115, §§ 7, 8. Assuming *arguendo*, this disparate treatment qualifies as facial discrimination against interstate commerce, we cannot determine whether the remaining statute can be saved by severing any offending language, because we cannot evaluate, based on this record, whether section 9H.2 has a discriminatory purpose or a discriminatory effect. Therefore, we remand the case to the district court, which is more able to determine with further discovery whether severance may be applicable and could save section 9H.2 from being unconstitutional, if the statute is unconstitutionally discriminatory.[5]

## III.    CONCLUSION

For the foregoing reasons, we vacate the district court's judgment and remand for discovery and for consideration of whether the new section 9H.2 unconstitutionally discriminates against interstate commerce. If the district court concludes section 9H.2 only incidentally discriminates against interstate commerce, the district court must determine whether "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." Pike, 397 U.S. at 142.

––––––––––––––––––––––––––––––

[5]We also note, at oral argument, two parties mentioned Smithfield had acquired an Iowa cooperative. The district court can better determine the effect of Smithfield's acquisition on this case.