# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1299

_____

| | | |
|---|---|---|
| IESI AR Corporation, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Northwest Arkansas Regional Solid | * | Western District of Arkansas. |
| Waste Management District; | * | |
| Bill Lord, In his official capacity as | * | |
| Director and in his individual capacity, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 14, 2005
Filed: January 5, 2006

_____

Before SMITH, HEANEY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The Northwest Arkansas Regional Solid Waste Management District, and its director Bill Lord, promulgated a regulation that solid waste must be disposed at either in-District or out-of-state landfills, unless otherwise authorized by the District. The district court[1] held that the District neither violated the United States and Arkansas

_____

[1]The Honorable Jimm L. Hendren, United States District Judge for the Western District of Arkansas.

constitutions, nor tortiously interfered with business contracts. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

IESI AR Corporation, an Arkansas corporation, is a wholly-owned subsidiary of IESI Corporation, a Texas corporation. The Northwest Arkansas Regional Solid Waste Management District regulates solid waste management in six northwest counties. IESI AR operates a landfill in a county outside of the District. In July 2000, IESI AR purchased an in-District waste-transfer station, allowing it to accept deliveries from in-District haulers and transfer the waste to its out-District landfill. Included in the purchase was an authorization – granted to the previous transfer-station owner by the District – to transport waste outside the District.

On July 25, 2001, the District promulgated "Rules, Regulations and Administrative Practices and Procedures." According to Chapter F "Waste Transfers," a person wishing to transfer solid waste out of the District must make a formal written request. One stated purpose is to allow the District's board "to have input and decision-making authority regarding the transfer of solid waste either into or out of the boundaries of the District." The regulation does not apply to "the transfer of waste outside the District to another state." Because of various geographical restrictions, there is only one landfill within the District, and it is privately owned. The District receives the same fee whether the solid waste is delivered to the in-District landfill or to IESI AR's transfer station.

On September 9, 2003, the District sent a letter to Buddy's Trash Service, an independent hauler, stating it needed to apply for approval, as required by the regulations, before delivering solid waste to IESI AR's transfer station. About this same time, the District made a phone call to Searcy County Collection, another independent hauler, repeating the same information: file a request to transfer waste out

of the District, or stop using IESI AR's transfer station. Both Buddy's Trash Service and Searcy County Collection stopped using IESI AR's transfer station, delivering their solid waste instead to the single in-District landfill. Neither hauler made a formal written request to take solid waste outside the District.

## II.

The district court granted summary judgment to the District, ruling that its regulations did not violate the Commerce Clause, the anti-monopoly provision of the Arkansas Constitution, or 42 U.S.C. § 1983. The court also ruled the regulations did not tortiously interfere with IESI AR's contracts and business expectancies. A grant of summary judgment is reviewed de novo. *See United Waste Sys. of Iowa, Inc. v. Wilson*, 189 F.3d762, 765 (8th Cir. 1999). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmovant, shows no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. **Fed. R. Civ. P. 56(c)**.

First, IESI AR contends that the District's regulation violates the Commerce Clause of the United States Constitution, which grants Congress the power to regulate commerce between the states. **U.S. Const. art I, § 7, cl. 3**. "Implicit within the Commerce Clause is a negative or dormant feature that prevents individual states from regulating interstate commerce." *United Waste Sys.*, 189 F.3d at 765; *see also* **3 The Records of the Federal Convention of 1787, at 478, 478 (Max Farrand ed., rev. ed. 1937)**. The dormant Commerce Clause keeps states from enacting "laws that discriminate against or unduly burden interstate commerce." *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 593 (8th Cir. 2003), *citing Quill Corp. v. North Dakota*, 504 U.S. 298, 312 (1992).

Dormant Commerce Clause analysis is two-tiered. First, if the state law discriminates against interstate commerce – facially, in purpose or in effect – it will

be invalidated unless the state can show, "under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *See U & I Sanitation v. City of Columbus*, 205 F.3d 1063, 1067 (8th Cir. 2000), *quoting C & A Carbone, Inc. v. Clarkstown*, 511 U.S. 383, 392 (1994). A state law discriminates against interstate commerce if it treats in-state economic interests differently than out-of-state interests in a way "that benefits the former and burdens the latter." *Smithfield Foods, Inc. v. Miller*, 367 F.3d 1061,1066 (8th Cir. 2004), *quoting Hazeltine*, 340 F.3d at 593. Second, a law that does not overtly discriminate against interstate commerce, but instead regulates even-handedly, will still be invalidated if "the burden it imposes upon interstate commerce is 'clearly excessive in relation to the putative local benefits.'" *U & I Sanitation*, 205 F.3d at 1067, *quoting Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

In this case, the District's regulation does not facially discriminate against interstate commerce. In fact, it explicitly exempts solid waste destined for landfills outside of Arkansas.

Thus, IESI AR must show that the District's regulation somehow discriminates based on purpose or effect. *See W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201 (1994). In determining whether a regulation has a discriminatory purpose, courts consider both direct and indirect evidence. *See Smithfield Foods*, 367 F.3d at 1065. This includes: 1) statements by lawmakers; 2) the sequence of events preceding the regulation's adoption, including irregularities in the procedures; 3) the state's consistent pattern of discriminating against, or disparately impacting, a particular class of persons; 4) the regulation's historical background, including whether it has been historically used to discriminate; and 5) the regulation's use of highly ineffective means to promote the legitimate interest asserted by the state. *Id.*

IESI AR claims that the District has no legitimate purpose in promulgating its regulation. Instead, IESI AR argues that the District had overt discriminatory

purposes, as demonstrated when it informed IESI AR that the previous transfer permit does not allow any increase in solid waste. IESI AR also asserts that some District board members expressed the opinion that IESI was "a big company from out of state." However, these statements do not demonstrate a discriminatory purpose. At most, they show the District's concern for solid waste management and the legitimate interest in maintaining an in-District landfill. In fact, the District's stated purpose for the regulation is to allow it "input and decision-making authority regarding the transfer of solid waste either into or out of the boundaries of the District" – a wholly legitimate interest. IESI AR says that the District's stated purposes, including gathering information, could be accomplished through less restrictive means. But the regulation does not use "highly ineffective means," and because it does not discriminate, there is no requirement that the District narrowly tailor its regulation.

The regulation also does not have a discriminatory effect on interstate commerce. A regulation discriminates in effect if it favors in-state economic interests over out-of-state interests. *See id.* at 1066, *citing **Brown-Forman Distillers Crop. v. N.Y. State Liquor Auth.*** 476 U.S. 573, 579 (1986). In this case, there is no indication that in-state economic interests are favored; in fact, many in-state interests are disadvantaged over out-of-state interests because the regulation exempts solid waste bound for landfills outside Arkansas. The only preferential treatment the regulation bestows is to in-District landfill operators as opposed to other *Arkansas* operators, which "does not constitute discrimination against interstate commerce." ***Ben Oehrleins & Sons & Daughters, Inc. v. Hennepin County***, 115 F.3d 1372, 1385 (8th Cir. 1997). "This may create a monopoly at the local level, but as long as waste is allowed to flow freely in or out of the state, this does not constitute discrimination against interstate commerce." ***Id.***

The current case is almost identical to *Oehrleins*, where by ordinance designated waste generated within the county must be delivered to facilities within the county. However, unlike the regulation here, the *Oehrliens* ordinance did not exempt

out-of-state landfills. *See id.* at 1384. This court rejected the district court's conclusions:

> The district court also reasoned that the Ordinance "as enforced" discriminates in effect by denying out-of-state concerns the ability to compete for local waste. To use the district court's example, "[a]n out-of-state concern which built a state-of-the-art processing facility in the middle of Hennepin County could not lawfully receive any waste from the County." . . .
>
> This "market access" theory also assumes that an out-of-state concern that permanently locates an operation within the state is still an "out-of-state" entity that can complain that a law that even-handedly restricts a local market is "discriminatory." The plaintiffs offer no authority for this position. A Delaware corporation doing business in Minnesota could not argue that it is discriminated against by Minnesota laws that apply equally to all businesses operating in the state. South Dakota companies may chose not to locate operations in Minnesota because of comparatively high state taxes that apply to all businesses, but this is not discrimination under the Commerce Clause. Like any other local market regulation, Ordinance 12 may or may not encourage companies from doing business in the state. But while this may be a relevant concern in forming economic policies, it is simply not the proper inquiry for considering discrimination under the Commerce Clause. Plaintiffs' analysis would render virtually all local economic regulations "discriminatory" and subject them to "per se" invalidation. This would vastly expand the implications of the dormant Commerce Clause, and we decline to follow such a course.

*Id.* at 1386–87 (citations omitted).

In this case, although a subsidiary of a larger interstate company, IESI AR is itself an Arkansas corporation, complicating its claim of discrimination against interstate commerce. Moreover, the District's regulation parallels the ordinance "as enforced" in *Oehrleins*. IESI AR cannot complain about this regulation because it applies equally to all businesses operating in the state. IESI AR provides no evidence

that out-of-state businesses suffered greater than in-state, but out-of-District, businesses. Under the regulation, IESI AR may transfer solid waste to any IESI landfill outside Arkansas. However, IESI AR's real complaint is that it cannot transfer additional waste to its in-state landfill without the District's approval – which applies equally to all businesses regardless of location. Because the regulation does not favor in-state economic interests over out-of-state interests, it does not discriminate in effect, and survives the first tier of dormant Commerce Clause analysis.

A regulation that is not overtly discriminatory against interstate commerce may still be invalidated under the second tier: the *Pike* balancing test. *See U & I Sanitation*, 205 F.3d at 1067. This test requires balancing a legitimate local public interest against its incidental burden on interstate commerce. *See Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 670–71 (1981); *S. Union Co. v. Mo. Pub. Serv. Comm'n*, 289 F.3d 503, 508 (8th Cir. 2002). A regulation will be invalidated only when "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. In this case, the burden on interstate commerce is, at best, minimal. Contrary to IESI AR's claims, the "revenue generation" to which *U & I Sanitation* refers is actually the generation of revenue *for* the government. *See U & I Sanitation*, 205 F.3d at 1070 n.5. Instead, the District's stated purposes – to have input and decision-making authority regarding the transfer of solid waste – are clearly legitimate, and the permit system is a reasonable method for achieving the District's goals.

Considering the regulation's impact in the aggregate, it still does not excessively burden interstate commerce. If every state enacted a similar law, interstate commerce would not be burdened because waste could still travel between states. Additionally, if every waste management district in Arkansas passed a similar regulation, out-of-state businesses that own an Arkansas landfill would actually benefit because they would receive the benefits of both local protectionism and the out-of-state exemption. Finally, any minimal burden on interstate commerce is not clearly excessive in

relation to the regulation's benefits. Thus, the District's regulation is valid under the second tier of dormant Commerce Clause analysis.[2]

## III.

IESI AR's second argument is that the District's regulation violates the prohibition in the Arkansas Constitution that: "Perpetuities and monopolies are contrary to the genius of a republic, and shall not be allowed . . . ." **Ark. Const. art. 2, § 19**. Because only one landfill operates within the District, and a hauler must either take its trash out of state or receive District approval to haul outside the District, IESI AR claims there is a de facto monopoly.

Although IESI AR admits that the constitution does not forbid monopolies "necessary in the exercise of the police power to provide for the public health, safety or welfare," it argues that those cases are inapplicable here because there was no contract or other agreement between the District and the private landfill. *See, e.g., Smith v. City of Springdale*, 722 S.W.2d 569, 570 (Ark. 1987); *Bridges v. Yellow Cab Co.*, 406 S.W.2d 879, 880 (Ark. 1966). Although *Smith* did involve a sanitation contract with the city, it also states that "monopolies are upheld when deemed necessary in executing a duty incumbent on city authorities or the legislature for the preservation of public health." *Smith*, 722 S.W.2d at 570, *quoting* **In re Lowe**, 39 P. 710, 712 (Kan. 1895). Granting a necessary monopoly is not contingent on the existence of a contract with the government, but only that the regulation be a valid exercise of the state's police powers. *See Cap F. Bourland Ice Co. v. Franklin Utils. Co.*, 22 S.W.2d 993, 996 (Ark. 1929); *Dreyfus v. Boone*, 114 S.W. 718, 720–21 (Ark. 1908). Similarly, in *Bridges*, the state supreme court upheld a state-authorized monopoly for airport taxi service because there was not enough business to support

---

[2] Because the District did not violate the Commerce Clause, IESI AR's claims for damages under 42 U.S.C. § 1983 also fails.

a competitive market. *See **Bridges***, 406 S.W.2d at 880. Thus, the court recognized that monopolies may be necessary to ensure essential services.

In the present case, the facts that: 1) IESI AR could still transfer a significant amount of solid waste out of the District under its previous authorization; 2) haulers can transport trash outside Arkansas; and 3) haulers can apply for transfer permits, seem to indicate there is no real monopoly here. But, even if there is a de facto monopoly, the District still had the authority to promulgate its Rules and Regulations, including Chapter F. *See* **Ark. Code Ann. § 8-6-712(b)**. Ensuring adequate waste disposal resources is a valid exercise of the state's police power to protect public health. Thus, the de facto monopoly, if it does exist, is necessary to carry out the District's statutory duties.

## IV.

Third, IESI AR claims that the District's regulations intentionally interfere with its contracts and business expectancies, including those with Buddy's Trash Service and Searcy County Collection. As the district court notes, IESI AR cites no authority for the proposition that a government entity, like the District, is liable for the tort of interference with contractual relationships by promulgating regulations authorized by state law.

Moreover, IESI AR's claim fails because it cannot satisfy the elements of tortious interference: "(1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." ***Vowell v. Fairfield Bay Cmty. Club, Inc.***, 58 S.W.3d 324, 329 (Ark. 2001). The District did not even discover that Buddy's Trash Service and Searcy County Collection were using IESI AR's transfer

station until two years after the regulation's promulgation. Therefore, the regulation was not passed with the intent to interfere with those relationships. Additionally, there is no evidence the District's actions were improper. *See id.* at 329. The record does not support IESI AR's contention that the District threatened Buddy's or Searcy in any way. Instead, the District notified them that in order to comply with the regulations, they must apply for permits before hauling waste outside the District (within Arkansas). IESI AR cannot claim that enforcing a regulation that satisfies the Commerce Clause, the Arkansas Constitution and the District's enabling act, somehow tortiously interferes with IESI AR's contracts and business expectancies.

## V.

The District's regulation does not violate the Commerce Clause because it is not discriminatory and any burden it places on interstate commerce is not clearly excessive in relation to the putative local benefits. The regulation does not violate the anti-monopoly provision of the Arkansas Constitution because even if a de facto monopoly exists, it is a necessary exercise of the state's police powers. The District did not tortiously interfere with IESI AR's business relationships by passing the regulation, and there is no evidence that the District's actions were improper.

The judgment of the district court is affirmed.

_____