REQUESTED BY: Douglas D. Christiansen, Commissioner of Education
This opinion is written in response to your request for an opinion about private postsecondary career schools that advertise and solicit in Nebraska.
 Background
In your letter you stated that Harcourt Learning Direct (HLD) is a private postsecondary correspondence school located and incorporated in Pennsylvania. It has no agents registered or licensed by the Nebraska Department of Education (Department), nor does it have a certificate of approval to recruit in Nebraska. It was brought to NDE's attention this past spring that HLD was engaged in at least the following activities in Nebraska:
 (1) By direct mail, soliciting and/or encouraging Nebraska residents to enroll or contract with HLD concerning its educational offerings, and
 (2) Causing advertising "inserts" to be placed in at least one Nebraska newspaper.
 Questions
You asked us to respond to the following questions:
 (1) Do the state statutes and regulations require HLD to acquire an agent's permit or permits and a certificate of approval to recruit?
 (2) If the answer to (1) is "yes," are these statutes then in violation of the Commerce Clause as is maintained by HLD?
 (3) If the answer to (2) is "yes," what are the appropriate actions and responses of the department in regard to administering the Private Postsecondary Career Schools Act?
 Discussion
Question:
 (1) Do the state statutes and regulations require HLD to acquire an agent's permit or permits and a certificate of approval to recruit?
Short Answer:
Yes.
Explanation:
"Sections 85-1601 to 85-1658 shall be known and may be cited as the Private Postsecondary Career School Act." Neb. Rev. Stat. § 85-1601
(1999). The purpose of the Private Postsecondary Career School Act ("Act" or "Nebraska Act") is to provide for the protection, education, and welfare of Nebraska citizens, its private postsecondary career schools, and its students. Some schools, organizations or types of education are exempt from the Act. These exemptions are identified at § 85-1604. It does not appear that HLD fits within any of these exemptions, nor is HLD claiming that it qualifies for a § 85-1604 exemption based on the material you forwarded to our office with your opinion request.
The acts prohibited by the Act are specified in § 85-1610. Subsections (2) and (3) are relevant for our purposes here.
No entity of whatever kind, alone or in concert with others, shall:
 (2) Offer, as or through an agent, unless such agent is a natural person and has a currently valid agent's permit issued pursuant to section 85-1623, enrollment or instruction in or the granting of educational credentials from a private postsecondary career school not exempted from the act, whether such institution is within or outside this state . . .
 (3) Instruct or educate, offer to instruct or educate, including advertising or soliciting for such purpose, enroll or offer to enroll, or contract or offer to contract with any school or party to perform any such act in this state, whether such entity is located within or without this state, unless such entity observes and is in compliance with the minimum standards established pursuant to sections 85-1606 and 85-1608 and the rules and regulations adopted and promulgated by the department.
Neb. Rev. Stat. § 85-1610 (1999) (emphasis added).
Definitions of words used in the Act can be found at § 85-1603. Several are relevant for our purposes here.
For purposes of the Private Postsecondary Career School Act:
 (1) Agent means any person who owns any interest in, is employed by, or regularly represents for remuneration a private postsecondary career school located within or outside this state who (a) by solicitation made in this state enrolls or seeks to enroll a resident of this state for education offered by such school, (b) offers to award educational credentials for remuneration on behalf of any such school, or (c) holds himself or herself out to residents of this state as representing such a school.
 (13) Offer includes, in addition to its usual meaning, advertising, publicizing, soliciting, or encouraging any person, directly or indirectly, in any form, to perform a described act.
 (14) Out-of-state school means any school which has its place of instruction or its principal location outside the boundaries of this state and which offers or conducts courses of instruction or subjects on the premises of the school, or provides correspondence or home study lesson materials, or offers or provides Nebraska students with courses of instruction or subjects through activities engaged in or conducted outside the boundaries of Nebraska.
 (16) Private postsecondary career school means any organization or business enterprise which is not specifically exempt under section 85-1604, which offers courses or subjects for which tuition is charged, and at the place of business of which a course of instruction is available through classroom instruction, home study, or both to a person for the purpose of training, preparing, or improving the person for an occupation even though the organization's or business enterprise's principal efforts may not be exclusively educational in nature.
Neb. Rev. Stat. § 85-1603 (1999).
Enclosed with your letter to this office were several attachments. Attachments A and B consist of advertising material soliciting individuals to enroll in correspondence courses through Harcourt Learning Direct. You have indicated that this material was mailed to at least one resident living in York, Nebraska and was also published in the York News Times, a local newspaper in York, Nebraska. Some of the material indicates that it is from Robert V. Antonucci, President of HLD. Other material references HLD, providing its address and phone number.
These activities along with the above-referenced statutes clearly subject HLD to the requirements of the Private Postsecondary Career School Act. The Act clearly applies to out-of-state schools. "Out-of-state school" is defined in § 85-1603. The definition of "agent" includes a reference to in-state and out-of-state schools. Section 85-1610 states that the prohibited activities apply to both in-state and out-of-state correspondence schools. The definition of "offer" includes advertising. Section 85-1610 prohibits correspondence schools located outside of Nebraska from advertising in Nebraska without an agent's permit.
Neb. Rev. Stat. § 85-1622 (1999) and subsequent statutes set forth the procedure for obtaining an agent's permit. Section 85-1622
specifies the information that must be included with an application for an agent's permit. It specifically references schools not domiciled in Nebraska. Neb. Rev. Stat. § 85-1643 (1999) specifies the fee required for obtaining a certificate of approval to recruit. The Department of Education, pursuant to the regulatory authority given to it in Neb. Rev. Stat. § 85-1606(6) (1999), has fleshed out the details of a certificate of approval to recruit in 92 NAC 42 (effective date: Jan. 10, 2000) ("Rule 42"). "Certificate of Approval to Recruit shall mean approval by the Department for out-of-state schools to recruit students in this state." Rule 42 § 002.07. The application procedure for obtaining a Certificate of Approval to Recruit can be found beginning at § 005 of Rule 42.
The above-referenced statutes and regulations clearly require HLD to acquire an agent's permit or permits and a certificate of approval to recruit.
Question:
 (2) If the answer to (1) is "yes," are these statutes then in violation of the Commerce Clause as is maintained by HLD?
Short Answer:
Probably Not.
Explanation:
 While we cannot conclude with certainty that a court would uphold these statutes under a commerce clause analysis, our analysis leads us to conclude that the statutes contained in the Act which are applicable to HLD do not violate the commerce clause.
Article I, § 8, cl. 3 of the U.S. Constitution grants to Congress the power to regulate commerce among the states. This grant of power contains a limitation upon the states to interfere with or impose burdens on interstate commerce. Not every exercise of state power, however, is invalid.
The conclusion was reached years ago that correspondence schools operate in interstate commerce. "[I]t now appears settled that the activities and operations involved in the conduct of a correspondence school . . . constitute commerce." C. R. McCorkle, Annotation, Regulation and Licensing of Correspondence Schools or Their Canvassers or Solicitors, 92 A.L.R.2d 522, 523. See also International Text-Book Co. v. Pigg, 217 U.S. 91 (1910); Associated Schools, Inc. v. Florida Dep't of Educ., 522 So.2d 426 (1988).
The U.S. Supreme Court, in Pike v. Bruce Church, Inc., 397 U.S. 137
(1970), adopted a two-tier approach for analyzing whether state statutes violate the commerce clause.
 Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.
Ponderosa Ridge LLC v. Banner County, 250 Neb. 944, 955, 554 N.W.2d 151,159 (1996).
 To pass constitutional muster under the Bruce Church test, a statute that burdens interstate commerce must serve a legitimate local interest and operate even-handedly on both interstate and intrastate commerce. If it does, the Court then weighs the beneficial local effects to be produced against the burden imposed on interstate commerce. State legislation will be upheld only when it incidentally burdens or discriminates against interstate commerce; state legislation that imposes burdens on commerce that are clearly excessive in relation to local benefits is invalid. Where burdens are not clearly excessive in relation to the local benefits, the constitutionality of a statute then depends on the character of the local interest and whether it could be promoted equally well by means having a lesser impact on interstate activities.
Ponderosa, 250 Neb. at 955-56, 554 N.W.2d at 159. See also Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573 (1986); Edgar v. Mite Corp., 457 U.S. 624 (1982); New Energy Co. v. Limbach,486 U.S. 269 (1988).
At this point, it would be helpful to review some of the rules for interpreting the constitutionality of a statute. "[A] statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality." Ponderosa, 250 Neb. at 949, 554 N.W.2d at 156. "The unconstitutionality of a statute must be clearly demonstrated before a court can declare the statute unconstitutional." Id. "The burden of establishing unconstitutionality of a statute is on the one attacking its validity." Id. "Even when a law may be constitutionally suspect, a court will attempt to interpret it in a manner consistent with the Constitution." CenTra, Inc. v. Chandler Ins. Co., Ltd., 248 Neb. 844,858, 540 N.W.2d 318, 329 (1995).
The local public interest served by the Private Postsecondary Career School Act can be found at § 85-1602 where the legislature describes the purpose of the Act. This section states in its entirety:
 It is the purpose of the Private Postsecondary Career School Act to provide for the protection, education, and welfare of the citizens of the State of Nebraska, its private postsecondary career schools, and its students by:
 (1) Establishing minimum standards concerning quality of education, ethical and business practices, health and safety, and fiscal responsibility in order to protect against substandard, transient, unethical, deceptive, or fraudulent schools and practices;
 (2) Prohibiting the granting of false educational credentials;
 (3) Prohibiting misleading literature, advertising, solicitation, or representation by schools or their agents;
 (4) Providing for the preservation of essential records; and
 (5) Providing certain rights and remedies to the consuming public and the board necessary to effectuate the purposes of the act.
Neb. Rev. Stat. § 85-1602 (1999). Clearly, § 85-1602 identifies legitimate issues of public concern to Nebraska residents.
Next we must determine whether the Private Postsecondary Career School Act applies even-handedly to both interstate and intrastate commerce. You state in your letter that, in your view, "applicable Private Postsecondary Career School Act statutes and regulations, on their face, provide that an out-of-state correspondence school who solicits and/or advertises within Nebraska, with or without the `physical presence' of an agent, is required to obtain an agent's permit and a certificate of approval to recruit."
A certificate of approval to recruit only applies to out-of-state schools. "Certificate of approval to recruit shall mean approval by the Department for out-of-state schools to recruit students in this state." Title 92 NAC 42 § 002.07 (effective date: Jan. 10, 2000) (Rule 42). Rule 42 § 005.02 sets forth the procedure to obtain an application for a certificate of approval to recruit. The application must be accompanied by the information required of in-state schools authorized under 92 NAC 41 § 005.09 (Rule 41). This information consists of descriptive literature published by the school and a surety bond or other security agreement. The application must also include evidence that the out-of-state school's place of business has been licensed or approved for operation by the appropriate state agency in the state in which the school is a resident. The annual fee for obtaining a certificate of approval to recruit is five hundred dollars per year. Neb. Rev. Stat. § 85-1643(3) (1999).
Rule 42 also provides information for obtaining an agent's permit. It appears that the same procedure applies to in-state and out-of-state schools. The applicant must be an individual of good reputation and character and can only represent schools which meet the minimum standards of Rule 41 § 004 for educational quality, facilities and equipment, ownership, administrative staff and instructional staff. All applicants for an agent's permit fill out the same application form provided by the Department of Education and each are required to obtain a separate permit for each school represented. Applications for an agent's permit must include the application fee and information about a surety bond, school safety, financial stability, contracts, evidence of a refund policy, descriptive literature and advertising. The fee for obtaining an agent's permit is different for in-state and out-of-state schools. The fee schedule is identified in Neb. Rev. Stat. § 85-1643 (1999). Agents for in-state schools pay fifty dollars for the initial permit and twenty dollars for renewal of their permits. Agents for out-of-state schools pay one hundred dollars for the initial permit and forty dollars for permit renewals.
Private postsecondary career schools located in Nebraska, on the other hand, must obtain an authorization to operate, and provide information about the school including the legal title, ownership and lack of felony convictions, instructional courses, facility location, instruction equipment, instructor qualifications, administrator qualifications and the information requested in Rule 41 § 005.09 (referenced above in the discussion on obtaining a certificate of approval to recruit). The initial application fee is two hundred dollars plus twenty dollars per program of study and the renewal fee is one hundred dollars plus twenty dollars per program of study as stated in Rule 41 § 005.09C. See also Neb. Rev. Stat. § 85-1643 (1999). Numerous other fees applicable to only in-state schools are set forth in Rule 41 § 005.09D. Within five years after an in-state school has obtained its initial authorization to operate, it must obtain accreditation pursuant to Rule 41 § 009. Part of this process includes an on-site evaluation, of which the expenses are paid by the school.
In-state and out-of-state schools are both subject to the prohibited acts identified at Neb. Rev. Stat. § 85-1610 (1999).
Given the above analysis of the regulatory requirements imposed on in-state and out-of-state schools, we cannot conclude that the burden is greater on out-of-state schools compared with the burden on in-state schools. The Private Postsecondary Career Schools Act regulates even-handedly to effectuate a legitimate local public interest.
We also cannot conclude that the Act imposes an undue burden on HLD in relation to the local benefits. The State of Nebraska, through implementation of the Private Postsecondary Career Schools Act, is not seeking to prevent out-of-state correspondence schools from operating in Nebraska. Rather, the purpose is for the protection, education, and welfare of Nebraska citizens, its private postsecondary career schools, and its students. These schools must be trustworthy and financially sound. They must live up to their promises. "States' power to regulate commerce is greatest when they act on matters of local concern . . . and state regulations enacted to promote public health and safety are accorded particular deference . . . Challengers to state regulations enacted to further public safety must overcome a `strong presumption of their validity.'" Burlington N. R.R. Co. v. State of Neb., 802 F.2d 994,999 (8th Cir. 1986).
As a correspondence school located in Pennsylvania, HLD is subject to the Pennsylvania Private Licensed Schools Act ("Pennsylvania Act"). The Act requires HLD to obtain a license prior to operation. Pa. Stat. Ann. tit. 24, § 6507 identifies ten items that applicants must show. Proof of financial responsibility is also required. Schools licensed under the Pennsylvania Act are subject to on-site inspections. Advertising and representations made by these schools are regulated under the Pennsylvania Act. Conditions are identified under which the regulatory body may refuse to issue, suspend or revoke a license. An admissions representative license is required by the Pennsylvania Act to solicit prospective students for enrollment.
To recruit students in Nebraska, the Nebraska Act requires HLD to obtain a certificate of approval to recruit. To obtain this certificate, HLD must submit an application to NDE along with descriptive literature published by HLD, a surety bond or other security agreement, and evidence that HLD is licensed or approved for operation in the state where it is located. The individual(s) advertising or soliciting in Nebraska on behalf of HLD must obtain an agent's permit. An individual obtaining an agent's permit must be of good reputation and character. The application for an agent's permit must be submitted to NDE and generally include information about a surety bond, school safety, financial stability, contracts, evidence of a refund policy, descriptive literature and advertising.
Both Acts appear to have similar goals and impose somewhat similar requirements on HLD. Since HLD is required to comply with the Pennsylvania Act, compliance with the Nebraska Act should not create much of an additional burden. However, even though HLD is regulated by the Pennsylvania Act, the State of Nebraska still has an interest in regulating HLD . The Pennsylvania Act appears to regulate HLD's activities occurring within the State of Pennsylvania and targeting Pennsylvania citizens. The Pennsylvania Act does not appear to regulate HLD's activities occurring within Nebraska and targeting Nebraska citizens. As we consider whether the Nebraska Act violates the commerce clause for its regulation of HLD, it is interesting to note that the Pennsylvania Act appears to regulate correspondence schools physically located outside of, but operating within, Pennsylvania.
Based on the above analysis, including the purpose for the Private Postsecondary Career Schools Act and the rules for interpreting the constitutionality of a statute, it is our conclusion that the burden imposed on interstate commerce is incidental and the benefits outweigh the incidental burdens upon interstate commerce.
Question 3:
 (3) If the answer to (2) is "yes," what are the appropriate actions and responses of the department in regard to administering the Private Postsecondary Career Schools Act?
Short Answer:
Since we concluded that the Private Postsecondary Career Schools Act most likely does not violate the commerce clause, it is unnecessary to address your third question.
 Conclusion
For the reasons set forth above, we conclude that the advertising activity engaged in by Harcourt Learning Direct within the state of Nebraska brings it under the requirements of the Private Postsecondary Career Schools Act. We also conclude that, if subjected to a legal challenge based on the commerce clause, it would most likely be upheld and, because of this conclusion, it was unnecessary to address your third question.
Sincerely,
 DON STENBERG Attorney General
 Charlotte R. Koranda Assistant Attorney General
Approved:
_________________________________ Attorney General