In the

# United States Court of Appeals
### For the Seventh Circuit

No. 02-2618

ALLIANT ENERGY CORPORATION and
WISCONSIN POWER AND LIGHT COMPANY,

*Plaintiffs-Appellants*,

*v.*

AVE. M. BIE, BURNEATTA BRIDGE and ROBERT M.
GARVIN, in their official capacities as Commissioners
of the Wisconsin Public Service Commission,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00 C 0611—**John C. Shabaz**, *Judge*.

ON PETITION FOR REHEARING EN BANC

DECIDED—JULY 14, 2003

Before FLAUM, *Chief Judge*, and COFFEY and WILLIAMS,
*Circuit Judges*.

FLAUM, *Chief Judge*. On June 12, 2003, plaintiffs-appellants, Alliant Energy Corporation and Wisconsin Power and Light Company, filed a petition for rehearing *en banc*. No judge in active service has requested a vote thereon and the petition is denied.

Nonetheless, the petition raises arguments not fully developed in appellants' original briefs,[1] and while these arguments do not change the outcome of this case they do warrant some further comment. Appellants' primary argument is that the panel's opinion does not address prior case law of this circuit and of the Supreme Court. Appellants claim that such precedent mandates the *per se* invalidation of *every* state regulation that has any extra-territorial effect whatsoever. This principle is not established by the cases they cite and is contradicted by other authority.

Before addressing the specifics, it will be useful to re-state the general principle set forth in our initial opinion. Under interstate commerce analysis we apply a two-tiered test. If the statute in question facially or directly discriminates against or regulates interstate commerce, it is "virtually *per se*" invalid—such a statute can only be saved by passing the strictest of scrutiny. On the other hand if the statute's effects on interstate commerce are only incidental or indirect and apply evenhandedly, we apply the balancing test established in *Pike v. Bruce Church, Inc.* 397 U.S. 137, 142 (1970). This is a somewhat general overview and we noted in our original opinion that there is no clear line separating the statute's that will be *per se* invalid and those that will be subject to the *Pike* balancing test. *Alliant Energy Corp. v. Bie*, No. 02-2618, slip op. at 10 (citing *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579 (1986)). We also noted that under either tier of the test "the critical

---

[1] In this context we urge future litigants to present fully and clearly in their original briefs all arguments they wish the court to consider. This advice is especially pertinent when a party is asking the court to take the momentous step of invalidating as unconstitutional duly enacted legislation.

consideration is the overall effect of the statute on both local and interstate activity." *Id.*

But what about extraterritorial regulation? Appellants suggest that a different standard should be applied. They suggest that regardless of the beneficial effects a statute has on local activity it should be declared invalid if it has *any* extraterritorial effects. Thus, what we have called "the critical consideration" for our general interstate commerce inquiry is, in the view of the appellants, irrelevant here. This position is not sustainable. It is not clear why the inquiry would be any different. Appellants have sought to invalidate the statute as violating the interstate commerce clause, and have failed to explain, other than citation to the supposedly supporting authority, why we shouldn't apply the traditional approach applied to all claims under the interstate commerce clause. And contrary to appellants' contentions the cases cited stand only for the unsurprising principle that a *direct or facial* regulation of wholly extraterritorial transactions is *per se* invalid, which is an unremarkable application of the traditional two-tiered approach.

Of course, the corollary to the principle that direct or facial regulation of wholly extraterritorial transactions is *per se* invalid under the two-tiered approach is the principle that incidental or indirect effects on extraterritorial transactions are subject to the *Pike* balancing test. This approach follows as extraterritorial regulation presents the same threats as regulation of interstate commerce, and there is no logical reason to treat the two differently. It is hard to explain why the validity of regulation of transactions between two states would turn on the identity of those two states.[2]

---

[2] Obviously, it will likely be harder in most cases for a state to come up with a local justification for statutes with extraterrito-

(continued...)

As we explained in our prior opinion, the regulations in question here have indirect and evenhanded incidental effects on interstate commerce and extraterritorial transactions. We therefore applied the *Pike* test and found the regulations to be justified.

Appellants question this reasoning. They argue that we erred in not applying the reasoning of Justice White's opinion in *Edgar v. MITE Corp.*, 457 U.S. 624 (1982). That reasoning, they argue, suggests that all extraterritorial regulation should be declared *per se* invalid. We noted that part V-A of Justice White's opinion, the part relied upon by appellants, did not garner support from a majority of the Court, whereas part V-B, applying the *Pike* balancing test, did. Appellants now contend that the reasoning of part V-A has been adopted by the Supreme Court in *Brown-Forman Distillers*, and this court in *Dean Foods Co. v. Brancel*, 187 F.3d 609 (7th Cir. 1999). Appellants note that *Brown-Forman Distillers* cites approvingly to part V-A of *Edgar v. MITE*. While this is true, the citation is for the proposition that direct regulation of interstate commerce is virtually *per se* unconstitutional. *Brown-Forman Distillers,* 476 U.S. at 579 and 582. But that much is well established and not at issue here. In fact, the citation in *Brown-Forman* implies that as the *Brown-Forman* court viewed Justice White's opinion in *MITE*, Justice White was saying that the statute in question was a *per-se*-invalid direct regulation under the traditional two-tier test (part V-A), and alternatively it was an indirect regulation that failed the *Pike* test (part V-B). The first proposition gained the support of a plurality, the second received the support of a majority. Thus, a majority of justices agreed that the two-tiered test was

---

[2]  (...continued)
rial effects, but that fact is accounted for in the two-tiered approach and the balancing test.

the appropriate approach, however they didn't agree on how the case before them fit that test. Read in this light, the opinion suggests that extraterritorial regulations are subject to the traditional interstate commerce analysis, which is the exact approach we followed in our opinion— we only reached a different result because the facts of our case are clearly distinguishable. Of course, appellants are not arguing that Justice White was saying that at all; they interpret his opinion as saying that in all cases extraterritorial effects will invalidate a statute regardless of the local benefit. Inasmuch as this interpretation was the view of the plurality in *MITE*, that view has not been adopted by subsequent decisions and is not controlling. *Cf. CTS Corp. v. Dynamics Corp.*, 481 U.S. 69, 81 (1987) (noting, in the context of a different section of the plurality opinion in *MITE*, that "[a]s the plurality opinion in *MITE* did not represent the views of a majority of the Court, we are not bound by its reasoning") (footnote omitted). We rejected that view in our original opinion, adhering instead to the majority's application of the *Pike* balancing test, and we reiterate that rejection here.

Appellants further advance that our opinion directly contradicts the opinion from this court in *Dean Foods,* 187 F.3d 609. The language appellants cite from that opinion is neither controlling nor contradictory. First, the cited passage is dicta and so, even assuming *arguendo* that the language in *Dean Foods* suggests tension with our opinion, it is not controlling. The parties in that case conceded that if the statute regulated extraterritorially it was invalid. *Id.* at 613. The panel's opinion held them to this concession, noting that the only issue before it was the factual question of whether the statute regulated extraterritorially. *Id.* at 616. Relatedly but more importantly, in our discussion in *Dean Foods* we never decided the issue. Recognizing that there was a significant legal issue involved, the panel discussed the contours of the

question of whether extraterritorial regulations were *per se* invalid. We discussed the *MITE* plurality and the language appellants want us to adopt, but immediately followed that with a discussion of the contrary Supreme Court holding in *CTS*. *Dean Foods*, 187 F.3d at 615. We then noted and discussed cases supporting the notion that direct and facial regulation of extraterritorial transactions is absolutely banned. But in the end we explained that the issue need not be decided. *Id.* at 616.

Finally, the *Dean Foods* case is distinguishable from our case, and the reach of the language should be confined to the type of facts in that case. The Wisconsin statute at issue there was being applied to dictate the price of milk sold in Illinois. Thus, we were dealing with a *direct* regulation of extraterritorial commerce. The fact that *Dean Foods* uses general language and does not address the distinctions of the two-tiered test is not surprising since the issue was not in contention and the statute before the court was a direct and therefore *per se* invalid regulation. As we have stated there is no question that such a regulation is *per se* invalid, but this tells us nothing about indirect effects on extraterritorial commerce—and since *Dean Foods* was not faced with that question, it is inappropriate to apply its analysis to this case.

Appellants also cite *Healy v. Beer Institute,* 491 U.S. 324 (1989), and *National Solid Waste Mgmt. Ass'n v. Meyer*, 63 F.3d 652 (7th Cir. 1995), as being contradictory to our position. Once again these are cases distinguishable on their facts because they deal with *direct* extraterritorial interference. In *Myers* the statute attempted to dictate the waste management and recycling standards in other states. 63 F.3d at 658. We applied the two-tiered approach and found that the statute was a direct regulation of interstate commerce and therefore *per se* invalid. *Id.* at 657-61. Likewise, *Healy* deals with direct extraterritorial

price regulation, which unquestionably is *per se* invalid. *Healy*, 491 U.S. at 335-40. Additionally, *Healy* also dealt with facial discrimination against out-of-state products. *Id.* at 340.

It would be a mistake to import the language from those cases when *CTS* is more clearly on point. *CTS* says that when a state regulates internal matters and the regulations have external effects, the regulations are not *per se* invalid. *CTS* dealt with an Indiana statute that regulated the acquisition of control shares in Indiana corporations owned in part by a significant number of Indiana residents. The statute had the possible effect of regulating transactions in which non-Indiana purchasers sought to acquire shares from non-Indiana shareholders. The Court nonetheless rejected the notion of *per se* invalidity:

> Dynamics argues in any event that the State has "'no legitimate interest in protecting the nonresident shareholders.'" Dynamics relies heavily on the statement by the *MITE* Court that "insofar as the . . . law burdens out-of-state transactions, there is nothing to be weighed in the balance to sustain the law." But that comment was made in reference to an Illinois Law that applied as well to out-of-state corporations as to in-state corporations. We agree that Indiana has no interest in protecting nonresident shareholders of *nonresident corporations*. But this Act applies only to corporations incorporated in Indiana. We reject the contention that Indiana has no interest in providing for the shareholders of its corporations the voting autonomy granted by the Act. Indiana has a substantial interest in preventing the corporate form from becoming a shield for unfair business dealing. Moreover, unlike the Illinois statute invalidated in *MITE,* the Indiana Act applies only to corporations that have a substantial number of shareholders in Indiana. Thus, every application of the Indiana Act will affect a sub-

stantial number of Indiana residents, whom Indiana indisputably has an interest in protecting.

481 U.S. at 93 (citations omitted). The first thing that is obvious from this excerpt is that the Court did not find the regulation *per se* invalid just because it burdened out-of-state transactions. Instead, the Court discussed the interests served by the regulations in question. Second, the Court ruled that a major factor in balancing interests is the fact that the regulation serves to protect a vital interest of local residents, and that it does so in every application. The same is true here. To use the similar phrasing of that case: Every application of the Wisconsin Act will affect a substantial number of Wisconsin residents [ratepayers], whom Wisconsin indisputably has an interest in protecting. The key factor is that *CTS* and the instant case are distinguishable from *MITE* because the regulations in *MITE* in some instances regulated extraterritorial transactions for no reason while providing no protection for any legitimate state interest, whereas the statutes in *CTS* and here never affect extraterritorial transactions without providing a corresponding and significant protection for a legitimate interest of local residents. *See also Amanda Acquisition Corp. v. Universal Foods Corp.*, 877 F.2d 496 (7th Cir. 1989) (applying the reasoning of *CTS* to uphold a statute that regulated tender offers of locally incorporated businesses). The reasoning of *CTS* is applicable to the case before us and rebuts appellants' claims that our opinion is foreclosed by the cases they have cited.

For the reasons set forth in this order and in the original panel opinion, the petition for rehearing is DENIED.

A true Copy:

    Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*