**BEYER FARMS, INC., Plaintiff,**

v.

**Arthur R. BROWN, Jr., et al.,
Defendants.**

**STATE OF NEW YORK, etc., Plaintiff,**

v.

**Arthur R. BROWN, Jr., et al.,
Defendants.**

**Civ. A. Nos. 87–3017, 88–1512.**

United States District Court,
D. New Jersey.

Aug. 14, 1989.

As Amended Sept. 20, 1989.

Sheldon A. Weiss, Millburn, N.J., for Beyer Farms, Inc.

Robert Abrams, Atty. Gen. State of New York, Lloyd Constantine, Asst. Atty. Gen., Chief, Antitrust Bureau, Joseph Opper, Asst. Atty. Gen., New York State Dept. of Law, New York City, and Linda Gargiulo, Nutley, N.J., for State of New York.

Peter N. Perretti, Jr., Atty. Gen. State of New Jersey, Eugene J. Sullivan, Jack M. Sabatino, Asst. Attys. Gen., Mark Oshin-skie, Deputy Atty. Gen., Trenton, N.J., for defendants.

## OPINION

WOLIN, District Judge.

By opinion and order of May 24, 1989, 721 F.Supp. 629 the Court denied cross-motions for summary judgment in Civil Action No. 88–1512. That case has since been consolidated with Civil Action No. 87–3017 by order of Magistrate G. Donald Haneke. Defendants in both actions—Arthur R. Brown, Jr., the New Jersey Secretary of Agriculture, and Woodson W. Moffett, Jr., the Director of the State's Division of Dairy Industry—now move for an order that would amend the Court's May 24 order to certify certain issues for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The State of New York, plaintiff in No. 88–1512, opposes the application. Beyer Farms, Inc., plaintiff in No. 87–3017, has taken no position. The Court will deny the request.

The detailed facts of this case are discussed in the May 24 opinion and will not be repeated here at length. Briefly, plaintiffs in both actions challenge defendants' enforcement of regulations that prohibit dealers from selling milk to retailers in New Jersey below cost, which is defined as the dealer's average total cost. N.J.Admin. Code §§ 2:52–6.1 & –6.2. Plaintiffs allege that the regulations violate the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, and that if defendants defined cost as average *variable* cost instead, there would be less of a burden on interstate commerce. Besides defending the regulations on the merits, Brown and Moffett contend that this Court lacks jurisdiction in No. 88–1512 in that it is a dispute between two States and thus lies within the original jurisdiction of the Supreme Court pursuant to art. III, § 2, cl. 2 of the Constitution and 28 U.S.C. § 1251(a), and that New York also lacks standing to bring that action. In the May 24 opinion the Court rejected defendants' jurisdictional and standing arguments, decided some aspects of the merits in defendants' favor, and reserved decision on the remainder of the merits pending further development of the record.

Section 1292(b) provides a mechanism for interlocutory appeal of an order not otherwise immediately appealable if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and if "an immediate appeal from the order may materially advance the ultimate termination of the litigation." If a district court certifies an order for interlocutory review, the Court of Appeals may then permit an appeal, in its discretion, upon a timely application. *Id.*

Defendants seek certification for interlocutory appeal of almost every aspect of this Court's May 24 order: jurisdiction, standing and the portions of the merits not decided in their favor. The Court finds that none of the issues warrant interlocutory review by the Court of Appeals.

To begin, the Court sees no substantial ground for difference of opinion on the jurisdictional issue. In *Louisiana v. Texas,* 176 U.S. 1, 20 S.Ct. 251, 44 L.Ed. 347 (1900), the Supreme Court held that it had no original jurisdiction to hear a dispute between two States over the allegedly unconstitutional enforcement by an official of one of the States of an apparently constitutional law adopted by that State's legislature. *Id.* at 22–23, 20 S.Ct. at 258–59. Eight years later, in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that even the state-authorized enforcement of an unconstitutional statute is not an act of the State and thus "does not affect the State in its sovereign or governmental capacity." *Id.* at 159–60, 28 S.Ct. at 454. Although *Ex parte Young* was an Eleventh Amendment case—that is, a suit brought by an individual against officials of a State—there is no reason why its holding should not apply as well to a suit, such as that in No. 88–1512, between one State and the officials of another. This is so particularly in light of the groundwork laid by *Louisiana v. Texas.* *See* May 24 Opinion, 721 F.Supp. at 633–635. Defendants erroneously argue that the Court's jurisdictional ruling "appears to be predicated upon this Court's belief that the United States Supreme Court may refuse to hear this case in the exercise of its original jurisdiction." Defendants' Initial Brief, at 3. New York, in fact, made such an argument as an alternative to its principal argument that the Supreme Court, were it presented with the present dispute, would likely hold that it had no original jurisdiction at all so that there would be no question of choosing to exercise jurisdiction. *See* Plaintiff New York's Brief in Support of Its Summary Judgment Motion and in Opposition to Defendants' Summary Judgment Motion, at 35–37. The Court, however, did not reach New York's alternative argument in the May 24 opinion because it agreed with New York's principal argument.

Nor does the Court see any substantial ground for difference of opinion on the standing issue as a whole. New York has asserted quasi-sovereign interests in both of the categories described in *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 U.S. 592, 607, 102 S.Ct. 3260, 3269, 73 L.Ed.2d 995 (1982): its interest in the economic well-being of a substantial portion of its residents and its interest in not being discriminatorily denied its rightful status within the federal system. Even if there is arguably substantial ground for difference of opinion as to the first interest asserted by New York, there is clearly no such ground as to the second: suits under the Commerce Clause are particularly apt for *parens patriae* standing since that clause is one of the key elements of our federalist system. *See* May 24 Opinion, at 636. It is telling that despite the Court's observation that defendants had not directly addressed the merits of the second quasi-sovereign interest asserted by New York, *see* May 24 Opinion, at 636, defendants have still managed to avoid that issue in their two subsequent submissions in support of the current motion.

Moreover, immediate appellate review of the jurisdictional and standing issues could not materially advance the outcome of this litigation. As already noted, the action brought by New York has been consolidated with the action brought by Beyer Farms, Inc., a New York-based milk dealer. Defendants have no jurisdictional or stand-

ing objections to Beyer's suit. Thus, even if the Court of Appeals were to reverse this Court's ruling and throw out New York's suit for want of jurisdiction or standing, this Court would still need to address the identical Commerce Clause claims brought by Beyer. Clearly, then, neither requirement of § 1292(b) has been satisfied for either the jurisdictional or standing aspects of the May 24 ruling.[1]

Defendants seek interlocutory review as well of portions of the merits of this case that were addressed by the Court in its May 24 opinion and order. As discussed in that opinion, Supreme Court cases delineate four ways in which a state law can violate the Commerce Clause: (1) by directly regulating interstate commerce; (2) by intentionally discriminating against out-of-state business interests; (3) by having the effect of discriminating against such interests; and (4) by producing incidental effects on interstate commerce that outweigh the putative local benefits of the law. *Brown–Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 578–79, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970); *see* May 24 Opinion, at 637–638. In the May 24 opinion and order the Court held in favor of New Jersey on the first and second of the four Commerce Clause theories but declined to rule on the third and fourth theories until further development of the record. Thus defendants, having successfully defeated half of New York's Commerce Clause theories, seek immediate appellate review of the other half: theories on which the Court has not yet even ruled. The asserted basis for this misguided request is the Court's opinion that antitrust principles are applicable to the *Pike v. Bruce Church* balancing test that the Court must conduct in order to resolve the fourth Commerce Clause theory. Defendants argue that "a law which is equally restrictive to in-state and out-of-state parties is, by definition, not burdensome to Commerce [sic]," Defendants' Initial Brief, at 11 (emphasis removed), and assert that all the Court need do in conducting the balancing test is determine whether the state law or regulation in question regulates evenhandedly, *id.* In so arguing, defendants have erroneously merged the *Pike v. Bruce Church* balancing test with the separate question (already decided in defendants' favor) whether the state law directly regulates interstate commerce by not treating in-state and out-of-state businesses evenhandedly.[2] Defendants thus evince a fundamental misunderstanding of the *Pike v. Bruce Church* balancing test, which in fact specifically presupposes that laws analyzed under the test regulate evenhandedly and have only incidental effects on interstate commerce. *See Brown–Forman*, 476 U.S. at 579, 106

---

1. Defendants advance two additional arguments in favor of interlocutory review of at least the jurisdictional issue. First, defendants contend that "the policy considerations underlying original jurisdiction suggest that a State should be entitled to appellate review of a lower court decision regarding original jurisdiction when that State is put to the burden of defending a suit on its merits." Initial Brief, at 2. Defendants have not, however, cited any authority for this proposition, which would contradict the clear terms of 28 U.S.C. § 1292(b). Moreover, the State of New Jersey is not a defendant; its officials are.

    Second, defendants argue that the Court's announced intention to publish the May 24 opinion not only weighs in favor of interlocutory review but "alone supports" such review. Defendants' Initial Brief, at 2, 8. The Court rejects this argument out of hand. Section 1292(b) is concerned with the benefits of interlocutory review to the parties, not to future litigants: will interlocutory review "materially advance the ul-timate termination *of the litigation*"? *Id.* (emphasis added). Moreover, other litigants will surely be as adept as ever at downplaying the precedential value of a district court opinion with which they disagree.

2. In their reply brief defendants also confuse the *Pike v. Bruce Church* balancing test with yet another of the remaining three theories: discrimination in effect. *See* Reply Letter Brief, at 3 ("New Jersey believes that the *Pike* test should be applied by comparing the number and percentage of application approvals and denials of New Jersey-based dealers who proposed to sell below total average cost to approval and denial figures of New York based dairies which proposed below cost sales."). Defendants' attempt to eviscerate the *Pike* theory by merging it with the other theories betrays their misunderstanding of the scope of state activity that is prohibited by the Commerce Clause.

S.Ct. at 2084; *Pike*, 397 U.S. at 142, 90 S.Ct. at 847.

Defendants are correct that this is not an antitrust case. Defendants are also correct that state laws are immune from the reach of the federal antitrust laws under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). State laws are not, however, immune from Commerce Clause scrutiny. It is undisputed that the New Jersey milk pricing regulations are having incidental effects on interstate commerce because they are prohibiting at least some transactions between New York dealers and New Jersey retailers. The Court must therefore conduct a *Pike v. Bruce Church* balancing test to determine whether the regulations violate the Commerce Clause. *See* May 24 Opinion, at 641–642. On one side of the scale are the burdens on interstate commerce; the Court has ordered the presentation of evidence so that it can measure these burdens. On the other side of the scale are the putative benefits to New Jersey of the regulations in question: the economic interests of New Jersey's milk industry and consumers in preventing destructive competition. Such destructive competition is predicted and measured by economic pricing theory, on which defendants themselves have presumably relied in promulgating and enforcing the regulation that prohibits sales below average total cost. Economic pricing theory seeks to predict, for example, at what point competition crosses from the constructive to the destructive: average total cost, average variable cost, etc. This same field of economic theory coincidentally underlies the federal antitrust laws and permeates antitrust case law. Thus it is defendants themselves who have implicated antitrust case law. It would be foolish for the Court to ignore this analogous, highly developed jurisprudence merely because it has not previously been applied to a Commerce Clause case. The Court is aware of no better alternative source to which to turn; defendants have proffered no serious alternative to propose to the Court of Appeals on an interlocutory appeal.

Defendants further argue that even if antitrust principles are applicable, the Court of Appeals should have an opportunity now to decide which pricing theory to adopt so that if it chooses one favorable to defendants they will be spared the burden and expense of developing the record. Defendants correctly note that the Third Circuit has not yet decided in the antitrust context at what point pricing becomes predatory and competition becomes destructive. Surely, though, the Circuit will not want to make such a theoretical ruling in the vacuum of an undeveloped record. "Speculation about hypothetical cases illuminates the discussion in a classroom, but it is evidence and historical fact that provide the most illumination in a courtroom." *Brown–Forman*, 476 U.S. at 586, 106 S.Ct. at 2088 (Stevens, J., dissenting). Ironically, although New York has not sought interlocutory review of the Court's rejection of two of its Commerce Clause theories, it might have had a sounder argument for such review than defendants do (assuming the other requirements of § 1292(b) were met) because the record on those theories has at least been sufficiently developed for both trial court decision and appellate review.

Defendants protest that this Court should not prevent the Court of Appeals from "even having a *chance* to consider whether it should exercise interlocutory review" of this Court's May 24 opinion. Reply Letter Brief, at 1 (emphasis in original). Yet 28 U.S.C. § 1292(b) authorizes interlocutory appeals only under limited circumstances and clearly contemplates that the Court of Appeals will not always have such a "chance." "[W]hat is the real harm in having the Third Circuit consider whether" to allow an interlocutory appeal?, defendants ask. *Id.* at 3. The proper question is not whether there is any "harm," but whether the strict requirements of § 1292(b) are met. Those requirements have not been met here. The Court will therefore deny the motion.

An appropriate order is attached.

## ORDER

For the reasons discussed in an opinion of the Court filed herewith,

It is on this 11th day of August, 1989

ORDERED that defendants' motion to amend this Court's May 24 order in Civil Action No. 88–1512 to certify certain issues for interlocutory appeal is denied.