Dear David D. Downes
You have requested our opinion about the approval of financial institutions by the Attorney Grievance Commission ("Commission") to handle attorney trust accounts for Maryland lawyers. The court rules governing trust accounts require that such accounts be maintained "in" Maryland, a state contiguous to Maryland, or the District of Columbia, at a financial institution approved by the Commission. Your question involves a federal savings association that has its headquarters and one branch in New York, but has no branch in Maryland or neighboring jurisdictions.
In our opinion, a financial institution located in another state, such as the federal savings association that prompted your question, must be authorized to do business and establish a branch in either Maryland or a contiguous jurisdiction in order to handle attorney trust accounts under Maryland law. Unless the financial institution has such a branch or intends to open one before it accepts attorney trust accounts, the Commission may not approve the financial institution to handle those accounts.
 I Background
A. Attorney Trust Accounts
A lawyer may not accept trust money — defined as "a deposit, payment, or other money that a person entrusts to a lawyer to hold for the benefit of a client or a beneficial owner" — unless the lawyer or the lawyer's firm maintains an attorney trust account. Annotated Code of Maryland, Business Occupations Professions Article ("BOP"), §§ 10-301(d), 10-302(a); see also Maryland Rule 16-603.[1]
A lawyer must expeditiously deposit trust money into that account, BOP § 10-304(a), and may not use trust money for any purpose other than that for which the funds are entrusted to the lawyer. BOP § 10-306; seealso Rules 16-604 and 16-609.[2]
A failure to comply with the rules pertaining to attorney trust accounts may constitute a violation of the Maryland Lawyers' Rules of Professional Conduct. See Rule 1.15 (requiring safekeeping of a client's property, including compliance with the rules governing attorney trust accounts). An attorney who willfully violates those provisions is subject to disciplinary proceedings and sanctions, including disbarment. BOP § 10-307; see, e.g., Attorney Grievance Com'n v. Gallagher,371 Md. 673, 705-9, 714-16, 810 A.2d 996 (2002) (disbarment of attorney based in part on failure to properly maintain trust accounts).
B. Location of Attorney Trust Accounts
An attorney trust account is to be maintained "in this State, in the District of Columbia, or in a state contiguous to this State, and shall be with an approved financial institution." Rule 16-603; see also BOP § 10-302(b). An "approved financial institution" means a financial institution approved by the Commission in accordance with the Maryland Rules. Rule 16-602(a). The rules define a "financial institution" as "a bank, trust company, savings bank or savings and loan association authorized by law to do business in this State, in the District of Columbia, or in a state contiguous to this State, the accounts of which are insured by an agency or instrumentality of the United States." Rule 16-602(g). The Commission is to publish in the Maryland Register at six-month intervals a list of currently approved financial institutions. Rule 16-611.
To gain approval by the Commission, a financial institution must file with the Com mission a written agreement "applicable to all branches of the institution located in the State." Rule 16-610(a).[3] The agreement is to provide that, as a condition of accepting funds for an attorney trust account, the financial institution will, among other things, notify the attorney or law firm and the Commission's Bar Counsel of any overdraft in the account or the dishonor for insufficient funds of any instrument drawn on the account. Rule 16-610(b). The financial institution must also promise to allow reasonable access to all records of the account if a circuit court orders an audit on petition of Bar Counsel or the Client Protection Fund. Rules 16-610(b)(1)(E), 16-722.
C. Federal Savings Associations
Y our question involves a federal savings association located in New York that wishes to handle trust accounts for Maryland attorneys. Accordingly, we review briefly the law governing federal savings associations.
Federal savings associations (sometimes referred to as a building and loan associations, savings and loan associations, or thrifts) are entities organized under the Home Owners Loan Act of 1933 ("HOLA"),12 U.S.C. §§ 1461 et seq.[4] HOLA was enacted by Congress largely in response to the effect the Great Depression had on the national housing market. See Wells v. Chevy Chase Bank, F.S. B., 377 Md. 197, 211, 832 A.2d 812 (2003). Federal savings associations do not engage in the general business of banking; rather, they are thrift institutions that are available for the deposit of funds and that use those deposits to provide financing, primarily for the purchase of homes. See 10 Am. Jur. 2d Banks and FinancialInstitutions § 18 (1997, 2007 Supp.).
HOLA authorizes the Office of Thrift Supervision ("OTS") to "provide for the examination, safe and sound operation, and regulation of savings associations," and to "issue such regulations as the Director [of OTS] determines to be appropriate to carry out the responsibilities of the Director or the Office." 12 U.S.C. § 1463(a). Specifically, the Director may prescribe regulations to "provide for the organization, incorporation, examination, operation and regulation" of federal savings associations and "to issue charters therefor, giving primary consideration of the best practices of thrift institutions in the United States." 12 U.S.C. § 1464(a).
The Director of OTS has defined a branch office of a federal savings association as any office other than a home, agency, administrative or data processing office, or an electronic means or facility.12 CFR § 545.92(a). The OTS regulations provide that, subject to certain exceptions, a federal savings association m ay apply to establish a branch in any state. 12 CFR § 545.93(a)[5]; see also Lyons S L Ass'nv. Fed. Home Loan Bank Bd., 377 F. Supp. 11, 17-18 (N.D. Ill. 1974) (branch banking by federal savings associations is not limited by state law or subject to state regulation).[6]
 II Analysis
A. Maintenance of an Account "in" Maryland or a ContiguousJurisdiction
You have asked whether a federal savings association with its headquarters and only branch in New York and no physical presence in Maryland or any of the contiguous jurisdictions may be approved by the Commission to handle attorney trust accounts for Maryland lawyers.
As outlined above, the governing statute and court rules require that a Maryland attorney maintain an attorney trust account in an "approved financial institution." The rules define "financial institution" to include a savings association that is authorized to do business in Maryland or a neighboring jurisdiction and that is federally insured. Rule 16-602(g). We will assume, for purposes of this opinion, that a federal savings association, whose deposits are federally insured and which is authorized under federal law to do business in any state, would be authorized to do business in Maryland or a contiguous jurisdiction and thus satisfies the definition of "financial institution" in Rule 16-602(g).
However, Rule 16-603 requires that an attorney trust account be maintained "in" Maryland or a contiguous jurisdiction. Thus, whether a federal savings association without a branch in Maryland or a neighboring jurisdiction may be approved by the Commission turns on whether an account with that savings association could be considered to be "in" that geographical area for purposes of Rule 16-603.
It is certainly possible for a Maryland depositor to open an account at a federal savings association without a physical presence in the State. However, nothing in the law governing federal savings associations would locate that account "in" Maryland by virtue of the residence or business address of the depositor. Nor does banking law generally resolve the location of an account as an abstract matter.See, e.g., J. H. Sommer, Where is a Bank Account?, 57 Md. L.Rev. 1, 26, 42 (1998).
In some contexts, it is clear that a bank account cannot be "in" a jurisdiction in the absence of a branch. For example, in Woodlands, Ltd.v. Westwood Ins. Co., Ltd., 965 F. Supp. 13, 15 (D.Md. 1997), the court held that an attachment served on a bank branch in Maryland was ineffective to reach an account maintained in the branch of the same bank in Virginia. Under that holding, an account with a financial institution that lacked a branch in Maryland would not be "in" the State for purposes of attachment and garnishment.
In any event, the requirement in Rule 16-603 that a trust account be "in" a specified geographical area is most appropriately construed in light of the purpose of the rules governing attorney trust accounts. Those rules were adopted by the Court of Appeals during the late 1980s in response to concerns about attorney defalcations and the need to exercise more oversight over the handling of trust moneys by attorneys.See Minutes of the Standing Committee on Rules of Practice and Procedure (September 12-13, 1986) at pp. 1-9.
The language limiting the location of an attorney trust account has been a part of the rules since their inception.[7]
Misuse of trust accounts has been a common basis for disciplinary action against attorneys. Accordingly, attorney trust accounts are subject to significant oversight by Bar Counsel. Rule 16-605(b), 16-610(b)(1)(C) (reports of dishonored instruments to Bar Counsel). As part of an audit of an attorney's activities, Bar Counsel may need access to the financial institution's records and employees. Rule 16-610(b)(1)(E) (financial institution must agree to allow Bar Counsel reasonable access to its records). The evident purpose of the requirement that the account be "in" Maryland or a contiguous jurisdiction, consistent with other provisions of the rules, is to facilitate the ability of Bar Counsel to gather and review records and other evidence relating to trust accounts of Maryland attorneys.
For similar reasons, other Maryland licensing regimes require that trust money be deposited in an account located "in" the State or a nearby geographic area. See, e.g., BOP § 17-503 (trust money given to real estate brokers to be deposited in insured financial institution "located in the State"); Annotated Code of Maryland, Insurance Article, § 22-103(d) (title insurer to deposit trust money in either financial institution "located in the State" or, with the approval of the State Banking Board, in an out-of-state institution); Annotated Code of Maryland, Business Regulation Article, § 14-115 (seller of business opportunity who provides certain guarantees must obtain surety bond or maintain trust account in favor of the State "with an insured bank or savings institution in the State"); COMAR 02.02.08.08 (funds related to sale of franchises subject to escrow condition to be placed in a trust account in a bank located in Maryland).
In our view, an account with a financial institution is "in" Maryland or a contiguous jurisdiction for purposes of Rule 16-603 only if the account is maintained with a branch in that geographic area. Thus, under Maryland law, the Commission may approve a federal savings association[8] to handle attorney trust accounts for Maryland lawyers only if the savings association has a branch in the designated area or commits to open one before it accepts any trust accounts.
B. Whether Federal Law Requires a Different Conclusion
Finally, we discuss briefly whether federal preemption of regulation of federal savings associations or the Commerce Clause of the federal Constitution would restrict the State's authority to require maintenance of attorney trust accounts within a specified geographical area.
1. Federal Preemption
The federal preemption doctrine originates in the Supremacy Clause of the United States Constitution, see Article VI, cl. 2, and makes state law unenforceable to the extent that federal law expressly so provides or the circumstances indicate that federal law supersedes state law.Wells, 377 Md. at 209-10. Preemption may occur if there is evidence of Congress' intent to "occupy a given field" and the state law falls within that field. Id. Determining whether state law has been preempted by federal law is ordinarily a question of congressional intent; a federal regulation adopted pursuant to authority delegated by Congress can have the same preemptive effect as a statute. Id. at 210-11.
Congress has delegated to OTS and its predecessor agency the regulation of federal savings associations, including the authority to preempt state law s affecting their operations. Wells, 377 M d. at 213-14. In its regulations, OTS has "occupie[d] the entire field of federalsavings associations' deposit-related regulations."[9]12 CFR § 557.11(b). The regulations provide a list of state laws subject to preemption, 12 CFR § 557.12[10], and explicitly provide that various types of state laws that only "incidentally" affect deposit-related activities are not preempted. 12 CFR § 557.13. Types of state laws that are not preempted include: contract and commercial law; tort law; and criminal law. Id.
In delineating the geographic area within which a Maryland attorney may maintain an attorney trust account and effectively limiting the attorney's choice to institutions with a branch in that area, the Maryland Rules do not purport to regulate federal savings associations, or their deposit operations, in more than an incidental manner. The Rules are intended to facilitate the Commission's access to evidence relating to possible attorney misconduct rather than generally regulate deposit activities. In our view, they are not preempted under12 CFR § 557.13.
2. Commerce Clause
The Commerce Clause of the federal Constitution grants Congress the power "[t]o regulate Commerce . . . among the several States." United States Constitution, Article I, § 8, cl. 3. Although this language explicitly grants power to Congress, it has long been recognized as an implicit restraint on state authority. See United Haulers Ass'n, Inc. v.Oneida-Herkimer Solid Waste Mgmt. Auth., ___ U.S. ___, 127 S. Ct. 1786,1792 (2007). A state law or rule that discriminates against interstate commerce is invalid under the Commerce Clause unless the discrimination is justified by some factor unrelated to economic protectionism.West Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 192-93 (1994). When the statute or rule is not intentionally protectionist, has only indirect effects on interstate commerce, and regulates evenhandedly, a court will balance the legitimacy of the State's interest against the burden on interstate commerce. Brown-Forman Distillers Corp. v. New York StateLiquor Auth., 476 U.S. 573, 578-79 (1986); see also Pike v. BruceChurch, Inc., 397 U.S. 137, 142 (1970); 69 Opinions of the AttorneyGeneral 37, 45-49 (1984); 68 Opinions of the Attorney General 75, 78-81 (1983).
The geographical limitation on the location of attorney trust accounts required by the Maryland Rules is designed to aid the regulation of the legal profession in Maryland by allowing Bar Counsel to gain ready access to witnesses and records related to those trust accounts. It is hardly an example of economic protectionism directed at out-of-state financial institutions. Nor do the Rules impose excessive burdens on out-of-state financial institutions, which may simply establish a branch in Maryland or in another contiguous jurisdiction in order to compete for attorney trust accounts of Maryland lawyers. Given the regulatory purpose of the geographical limitation, this aspect of the Rules does not offend the Commerce Clause, because it is "directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." United Haulers Ass'n, Inc., 127 S.Ct. at 1797.
 III Conclusion
For the reasons stated above, a financial institution located in another state, such as the federal savings association that prompted your question, must be authorized to do business and establish a branch in either Maryland or a contiguous jurisdiction in order to handle attorney trust accounts under Maryland law. Unless the financial institution has such a branch or intends to open one before it accepts attorney trust accounts, the Commission may not approve that institution to handle those accounts. Thus, an account with the financial institution is "in" Maryland or a contiguous jurisdiction only if the account is maintained with a branch in that geographical area.
Douglas F. Gansler Attorney General
Mark J. Davis Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] The rules governing attorney trust accounts do not apply to "a fiduciary account maintained by an attorney as personal representative, trustee, guardian, receiver, or committee, or as a fiduciary under written instrument or order of court." Rule 16-601.
[2] In specified circumstances, a lawyer must deposit funds into an interest-bearing accounts for which the interest is payable to the Maryland Legal Services Corporation ("MLSC"). BOP § 10-303 (trust money to be deposited when lawyer reasonably expects that cumulative interest will not exceed $50 or would not cover the costs of administering the account); see also Rule 16-608 (providing that an attorney has no right to interest paid on funds deposited in an attorney trust account, and that such interest belongs to the client or third person whose funds are on deposit, except for funds paid to the MLSC as authorized by law).
[3] It is unclear why Rule 16-610(a) specifies only that the agreement is to apply to all branches of the financial institution located in Maryland, while Rule 16-603 allows the account to be maintained in a broader geographic area — i.e., "in this State, in the District of Columbia, or in a state contiguous to this State." A recently proposed amendment of Rule 16-610 would eliminate that apparent inconsistency.See 158th Report of the Standing Committee on Rules of Practice and Procedure at 239-40, available atwww.courts.state.md.us/rules/reports/158thReport.pdf. In addition, under the proposed amendment, a financial institution would enter into the agreement with the Maryland Legal Services Corporation.
[4] State law defines "federal association" to mean a: "(1) savings and loan association that is incorporated under the laws of the United States; or (2) federal savings bank that operates under the jurisdiction of the Federal Home Loan Bank Board and whose accounts are insured by the Federal Savings and Loan Insurance Corporation." Annotated Code of Maryland, Financial Institutions Article ("FI"), § 9-101(h). While FI § 9-101(h) refers to the "Federal Home Loan Bank Board", a 1989 amendment to HOLA dissolved that Board and transferred its powers and duties to the Office of Thrift Supervision. See Annotation,Preemption Issues Arising Under Home Owners' Loan Act of 1933,12 U.S.C.A. §§ 1461 et seq., 13 ALR Fed. 2d 161, § 2 (2007 Supp.).
[5] Pursuant to 12 C.F.R. § 545.92(b), a federal savings association may open up a branch in any state unless the location would violate three particular federal statutes.
[6] In Lyons, the court noted the absence of any provision in HOLA comparable to that found in § 36(c) of the National Bank Act,12 U.S.C. § 36(c), which expressly limits branching of national banks to the extent allowed state banks by state law.
[7] As originally proposed by the Rules Committee, the rules on attorney trust accounts limited the financial institutions at which the accounts could be established to those authorized to do business in Maryland. See Proposed Rules BU1(g), BU3, 14:20 Md. Reg. 2127-29 (September 25, 1987). However, prior to its adoption, the Court of Appeals amended Rule BU3 to provide that an attorney trust account "shall be maintained in this State, in the District of Columbia, or in a state contiguous to this State . . ." 15:7 Md. Reg. 844-46 (March 25, 1988). One year later, the Court also amended the definition of financial institution in Rule BU1(g), which had included only institutions authorized to do business in Maryland, to also include institutions authorized to do business in the District of Columbia and contiguous states. See 16:5 Md. Reg. 618-22 (March 10, 1989).
The BU rules were later recodified as Title 16 of the Maryland Rules in 1996. 23:14 Md. Reg. P-96 to P-97 (July 5, 1996). As part of that recodification, Rule BU1(g) and BU3 became Rules 16-101(g) and 16-603, respectively, without change.
[8] Your question involves a federal savings association and not a national bank. However, as best we can tell, none of the distinctions between a federal savings association and a national bank would lead to a different conclusion as to a national bank without a branch in Maryland or a contiguous jurisdiction.
[9] The regulations also provide that OTS has "occupie[d] the entire field of lending regulation for federal savings associations."12 CFR § 560.2(a). The regulations provide a list of types of state laws subject to preemption. 12 CFR § 560.2(b). The same regulations also explicitly provide that various types of state laws that only "incidentally" affect lending operations are not preempted.12 CFR § 560.2(c).
[10] The OTS preempts state laws that impose requirements relating to: abandoned and dormant accounts; checking accounts; disclosure requirements; funds availability; savings account orders of withdrawal; service charges and fees; state licensing or registration requirements; and special purpose savings. 12 C.F.R. § 557.12. The Maryland Rules do not purport to impose requirements in these areas or in related areas. *Page 180