[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 06–16606

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 8, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 06-10061-CV-KMM

JOSEPH CACHIA,

Plaintiff–Appellant,

versus

ISLAMORADA, VILLAGE OF ISLANDS,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(September 8, 2008)**

Before TJOFLAT and BLACK, Circuit Judges, and RESTANI,[*] Judge.

RESTANI, Judge:

Plaintiff-Appellant Joseph Cachia ("Cachia") appeals an order of the United

---

[*]Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

States District Court for the Southern District of Florida granting dismissal in favor of Defendant-Appellee Islamorada, Village of Islands ("Islamorada"). Cachia challenges an Islamorada zoning ordinance on the grounds that its "formula restaurant" provisions violate the Dormant Commerce Clause. We reverse and remand to the district court for further proceedings.

## BACKGROUND

In January 2002, Islamorada enacted Ordinance 02-02, which prohibits "formula restaurant[s]" and limits the size of "formula retail" establishments. (See Ordinance 02-02 §§ 6.4.3–4(a–b), available at R.E. Tab 2 at 22 ("Ordinance 02-02" or "the ordinance").) The ordinance defines a formula restaurant as:

> [a]n eating place that is one of a chain or group of three (3) or more existing establishments and which satisfies at least two of the following three descriptions: (1) has the same or similar name, tradename, or trademark as others in the chain or group; (2) offers any of the following characteristics in a style which is distinctive to and standardized among the chain or group: i. exterior design or architecture; ii. uniforms, except that a personal identification or simply logo will not render the clothing a uniform; or iii. has a standardized menu; or (3) is a fast food restaurant.

(Id. at § 6.4.1(d).) The ordinance states that "[f]ormula restaurants shall not be permitted in any zoning district of [Islamorada]." (Id. at § 6.4.3.)

Cachia is an owner and operator of an independent retail store in Islamorada. See Cachia v. Islamorada, No. 06-10061, slip op. at 1 (S.D. Fla. Oct.

2

13, 2006). In 2005, Cachia entered into a Letter of Intent to sell his property to a corporation planning to convert the property into a Starbucks coffee shop. Id. at 2. When the corporation was informed by Islamorada that such use would be prohibited by the ordinance, it notified Cachia that it no longer intended to purchase the property. Id.

Cachia brought a complaint against Islamorada before the district court seeking damages and injunctive relief on the grounds that the ordinance's formula restaurant provisions violated the Equal Protection, Due Process, Privileges and Immunities, and Commerce Clauses of the United States Constitution, as well as the terms of the Florida Constitution.[1] Id. With respect to the claim arising under the Dormant Commerce Clause, Cachia alleged that the ordinance "effectively prohibits 'Formula Restaurants' in any zoning district within [Islamorada's] geographical limits," (Compl. ¶ 5), "the primary purpose of the Ordinance is economic protection of small, single unit, locally-owned businesses," (id.), the ordinance "directly regulates or discriminates against interstate commerce and favors in-state economic interests over out-of-state interests," (id. at ¶ 17), and the ordinance "does not advance a legitimate local purpose that cannot be adequately

_____

[1]Cachia's arguments on appeal address only the district court's dismissal of the claim arising under the Dormant Commerce Clause. (See Cachia Br. xi, 1.)

served by reasonable nondiscriminatory alternatives," (id.).

On October 13, 2006, the district court granted Islamorada's Motion to Dismiss, finding, <u>inter alia</u>, that Cachia failed to state a claim because the ordinance's formula restaurant provision does not violate the Dormant Commerce Clause. <u>Cachia</u>, at 6–8. The district court found that the ordinance has only an indirect effect on interstate commerce, is supported by a legitimate state interest, and the burden on interstate commerce does not exceed local benefits. <u>Id.</u> at 8. Cachia appeals.[2]

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the appeals of final decisions of the district court pursuant to 28 U.S.C. § 1291. We exercise <u>de novo</u> review over the district court's decision to grant a motion to dismiss. <u>Doe v. Pryor</u>, 344 F.3d 1282, 1284 (11th Cir. 2003).

## DISCUSSION

The Dormant Commerce Clause prohibits "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." <u>New Energy Co. of Ind. v. Limbach</u>, 486 U.S. 269, 273 (1988). To determine whether a

---

[2]This appeal was consolidated for oral argument with <u>Island Silver & Spice, Inc. v. Islamorada</u>, No. 07-11418, which is disposed of in a separate opinion, filed concurrently with this opinion.

regulation violates the Dormant Commerce Clause, we apply one of two levels of analysis.  See Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 578–79 (1986).  If a regulation "directly regulates or discriminates against interstate commerce," or has the effect of favoring "in-state economic interests," the regulation must be shown to "advance[ ] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."  Bainbridge v. Turner, 311 F.3d 1104, 1109 (11th Cir. 2002) (quotations and citations omitted).  If a regulation is directed equally at interstate and local businesses, and has "only indirect effects on interstate commerce," we "examine[ ] whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits."  Brown-Forman, 476 U.S. at 579 (citing Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).

The district court correctly determined that the formula restaurant provision does not facially discriminate against interstate commerce.  See Cachia, at 7.  The district court also found that the ordinance equally targets restaurants "regardless of their state of citizenship or the locations of their other stores," and that any effect on interstate commerce is therefore "indirect."  Id. at 8.  Cachia challenges the district court's approach, arguing that the provision should instead be subject to elevated scrutiny because it favors in-state interests by eliminating the

5

economic advantages of operating a national chain restaurant.

Cachia's argument relies on Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977), which applied elevated scrutiny to a North Carolina statute requiring the use of a USDA grading system for apples sold within the state because the regulation had "the practical effect of . . . discriminating against" growers from Washington, who routinely applied a superior grading system. Id. at 350. Hunt found that the requirement impermissibly "rais[ed] the costs of doing business in the North Carolina market for Washington apple growers and dealers, while leaving those of their North Carolina counterparts unaffected." Id. at 351. In the instant case, the ordinance's formula retail provision does not simply raise the costs of operating a formula restaurant in Islamorada, but entirely prohibits such restaurants from opening. (See Ordinance 02-02 § 6.4.3.) Although the ordinance also prohibits formula restaurants that originate from within the state of Florida, the regulation serves as an explicit barrier to the presence of national chain restaurants, thus preventing the entry of such businesses into competition with independent local restaurants.

Islamorada asserts that the ordinance is not subject to elevated scrutiny because it does not prevent all out-of-state restaurants from entering the local market, and targets only those meeting the "formula restaurant" definition set forth

6

by the regulation. Islamorada points to <u>Exxon Corp. v. Governor of Maryland</u>, 437 U.S. 117 (1978), which held that the fact that the burden of a regulation fell onto a subset of out-of-state retailers "[did] not, by itself, establish a claim of discrimination against interstate commerce." <u>Exxon</u>, 437 U.S. at 126. <u>Exxon</u> found that, where in-state companies would "have no competitive advantage over out-of-state [companies]," the elevated scrutiny approach used in <u>Hunt</u> did not apply.[3] <u>Id.</u>

Although <u>Exxon</u> rejected the notion "that the Commerce Clause protects [a] particular structure or methods of operation in a retail market," <u>id.</u> at 127, the ordinance's complete prohibition of chain restaurants sharing certain characteristics amounts to more than the regulation of methods of operation, and serves to exclude national chain restaurants from competition in the local market. While the ordinance does not facially discriminate between in-state and out-of-state interests, its prohibition of restaurants operating under the same name, trademark, menu, or style is not evenhanded in effect, and disproportionately

---

[3]The Maryland statute challenged in <u>Exxon</u> provided "that a producer or refiner of petroleum products (1) may not operate any retail service station within the State, and (2) must extend all 'voluntary allowances' uniformly to all service stations it supplies." <u>Exxon</u>, 437 U.S. at 119–20. In particular, <u>Exxon</u> targeted "vertical organization in the petroleum industry," and did not "discriminate against interstate petroleum producers and refiners in favor of locally based competitors because . . . there were no such local producers or refiners to be favored." <u>Lewis v. BT Inv. Managers, Inc.</u>, 447 U.S. 27, 41, 40–41 (1980).

7

targets restaurants operating in interstate commerce. (See Ordinance 02-02 § 6.4.3; Compl. ¶ 5.) The ordinance's prohibition therefore imposes more than an indirect burden on interstate restaurant operations, and has the practical effect of discriminating against interstate commerce. Accordingly, the elevated scrutiny test applies. See Hunt, 432 U.S. at 353.

Under the elevated scrutiny test, the burden is on the local government to show both that the regulation is supported by a legitimate local purpose and that there are no reasonable nondiscriminatory alternatives adequate to serve that purpose. Id.; Bainbridge, 311 F.3d at 1109. Cachia's complaint alleges that "the primary purpose of the Ordinance is economic protection of small, single unit, locally-owned businesses," (Compl. ¶ 5), which is not a legitimate local purpose, and that the ordinance "does not advance a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives," (id. at ¶ 17). Although the district court noted that "[t]he Ordinance itself articulates the Village's interests in enacting [it],"[4] Cachia, at 8, the district court did not fully

_____

[4]The ordinance states the main purposes for its enactment, including the preservation of the "unique and natural characteristics of the community"; encouragement of "small scale uses, water-oriented activities, a nationally significant natural environment, quiet shorelines and passive relaxation opportunities"; maintenance of "a small town community"; and avoidance of "'auto-urban' development influences" and the threat of "the potential proliferation of 'formula' restaurants and retail establishments . . . [which] diminish the unique character of the Village by offering standardization of architecture, interior design and decor, . . . [and] are more likely to

(continued...)

8

consider, and could not consider on the record at this stage: 1) whether the ordinance's stated interests constitute a legitimate local purpose; 2) whether the prohibition of formula restaurants adequately serves such purpose; or 3) whether Islamorada could demonstrate the unavailability of nondiscriminatory alternatives, such as zoning ordinances or building codes, to fulfill the same needs. See id. The complaint adequately states a claim for relief, and further proceedings are necessary to develop a record upon which these issues may be properly considered by the district court.

## CONCLUSION

Accordingly, we REVERSE the district court's grant of dismissal in favor of Islamorada and REMAND for further proceedings consistent with this opinion.

---

[4](...continued)
increase the traffic congestion on the already overcrowded streets and increase litter, garbage and rubbish offsite." (Ordinance 02-02 at Preamble.)